**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JIMMY KASHANIAN, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

QUATRRO BUSINESS SUPPORT SERVICES, INC.

Defendant.

CASE NO. 1:26-cv-01800-TWT

Hon. Thomas W. Thrash, Jr.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS**

Pursuant to Rule 23(e), and subject to Court approval, Plaintiff Jimmy Kashanian (hereinafter "Plaintiff" or "Class Representative"), individually and on behalf of all others similarly situated, respectfully moves the Court for preliminary approval of the proposed settlement of this class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff requests that the Court grant the Motion and enter a Preliminary Approval Order: (a) preliminarily certifying the Settlement Class, appointing Plaintiff as Class Representative for the Settlement Class, and appointing Class Counsel as counsel for the Settlement Class; (b) preliminarily approving the proposed settlement as appearing sufficiently fair, adequate, and reasonable to warrant the issuance of the Notice; (c) approving the proposed notice plan as meeting the requirements of Rule 23 and due process; and (d) granting any related relief as

described herein. All definitions herein are the same as in the Settlement Agreement (hereinafter "S.A."), ***Exhibit 1***.

## I. PURPOSE

Rule 23(e) identifies the procedure for courts to consider and ultimately approve the settlement of an action that will bind class members. First, the parties must provide the court with sufficient information about the terms of the settlement to enable the court to determine whether to give notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1)(A). Notice should be ordered if the parties provide information showing that the court will likely be able to approve the settlement proposal and certify the class for settlement purposes. *Id.* at 23(e)(1)(B)(i) and (B)(ii). Approval is likely if, after a final hearing, the court can conclude the settlement as proposed is fair, reasonable and adequate considering whether: A) Plaintiff and class counsel have adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief to the class is adequate; and D) the proposed settlement treats class members equitably relative to each other. *Id.* at 23(e)(2)(A-D). Thus, for preliminary approval purposes, the court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and order notice of the settlement to the class. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) (hereinafter "Manual") § 21.632, at 320-21. This examination is typically "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id.*

## II. BACKGROUND

### A. History of Litigation

Quatrro Business Support Services, Inc. ("Defendant" or "Quatrro") experienced a data security incident in which one or more unauthorized third parties gained access to Quatrro's network environment, and to files containing the Personal

Information of individuals whose information Quatrro maintained, approximately between November 11, 2025, and November 19, 2025 (the "Data Incident"). S.A. ¶ 1. Quatrro discovered the unauthorized access on December 7, 2025. *Id.* During the Data Incident, one or more unauthorized third parties accessed Settlement Class Members' sensitive data including, but not limited to, full names, health insurance policy numbers, and Social Security numbers. S.A. ¶ 2; ***Exhibit 2***, Declaration of Daniel Srourian ("Srourian Decl.") ¶ 3. On or about March 23, 2026, Quatrro began sending notices of the Data Incident to those individuals whose Personal Information may have been impacted, informing them that their information may have been compromised in the Data Incident. S.A. ¶ 3. Defendant represents that the Settlement Class consists of approximately 208,000 individuals. S.A. ¶ 46.

On April 3, 2026, Plaintiff, a former employee of Defendant, filed his Class Action Complaint against Quatrro in this Court, alleging that Defendant implemented inadequate data security measures and controls, resulting in the Data Incident. Doc. 1; S.A. ¶ 4. Plaintiff asserted claims for negligence, negligence *per se*, breach of confidence, breach of implied contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. *Id.*

**B. <u>Mediation, Negotiations and Settlement</u>**

The Settlement is the result of arm's-length negotiations between counsel experienced in data breach class action litigation. Srourian Decl. ¶ 10. Before reaching the Settlement, the Parties exchanged confidential information related to the Data Incident that allowed the Parties to assess all aspects of the case and meaningfully engage in arm's-length settlement negotiations. S.A. ¶ 5. Quatrro provided informal discovery responses that included a summary of the facts based on the investigation into the Data Incident, as well as its recovery and restoration process and hardening measures. *Id.* Quatrro also provided and directed Plaintiff to information regarding the approximate total number of individuals impacted by the

Data Incident. *Id.* This exchange informed Plaintiff about the class size, the types of data impacted in the Data Incident, and information supporting Plaintiff's liability and damages allegations. *Id*. The Parties also participated in a mediation session with Steven R. Jaffe, Esq. of Upchurch Watson White & Max on July 22, 2026. *Id*. The Parties thoroughly prepared for the mediation and submitted mediation briefs for consideration. *Id*. However, the Parties were unable to resolve the matter after a full day of mediation but continued negotiating in the weeks that followed and were able to resolve thereafter. Srourian Decl. ¶ 11.

On August 12, 2026, following the informal exchange of information, mediation, and weeks of ongoing negotiations, the Parties reached a settlement and memorialized its material terms in a binding term sheet. S.A. ¶ 6. The Parties then negotiated and finalized the formal Settlement Agreement, which was executed on August 26, 2026. Srourian Decl. ¶ 13. This Settlement, if approved, would resolve all claims related to the Data Incident on behalf of the Settlement Class. S.A. ¶¶ 10, 40.

The Class Representative and Class Counsel strongly believe that this Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. Srourian Decl. ¶ 18. The Class Representative now moves this Court for entry of a Preliminary Approval Order, consistent with the [Proposed] Preliminary Approval Order submitted herewith as ***Exhibit 4***, granting preliminary approval of the Settlement and providing for notice of the Settlement to be distributed to the Settlement Class.

### C. Summary of Settlement Terms

The Settlement provides numerous benefits for the Settlement Class, which benefits are designed to compensate them for the harm suffered as a result of the Data Incident. The Settlement Class is defined as follows:

> All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident.

S.A. ¶¶ 46, 54. The Settlement Class specifically excludes: (i) Quatrro, and its officers and directors; (ii) all persons who timely and validly request exclusion from the Settlement Class; (iii) the presiding judge, and his or her staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 46.

**1. Settlement Benefits for Settlement Class Members**

The proposed Settlement will provide benefits to the Settlement Class Members (as defined in the Settlement Agreement) through a non-reversionary Settlement Fund of Two Million Eighty Thousand Dollars ($2,080,000.00) (the "Settlement Fund") from which Settlement Class Members' valid claims will be paid. S.A. ¶ 49; Srourian Decl. ¶ 20 As set forth in the Settlement Agreement, the Settlement Class Members may recover Documented Losses or, in the alternative, an Alternative Cash Payment. S.A. ¶¶ 56-57. All Settlement Class Members will also be provided with the opportunity to enroll in two (2) years of CyEx one-bureau Credit Monitoring Services, paid for by Defendant on a claims-made basis, separate from and in addition to the Settlement Fund. S.A. ¶¶ 23, 55.

***a. Documented Losses.***

Settlement Class Members can submit a claim for Documented Losses up to a maximum of Three Thousand Dollars ($3,000.00) per Settlement Class Member. Documented Losses are documented out-of-pocket costs or expenditures that a Settlement Class Member actually and reasonably incurred that are fairly traceable to the Data Incident, and that have not already been reimbursed by a third party. S.A. ¶¶ 28, 56. Documented Losses may include: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns,

or other misuse of a Settlement Class Member's Personal Information; (ii) costs incurred on or after November 11, 2025, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A. ¶ 56. If the aggregate amount of approved Claims for Documented Losses exceeds the remaining amount of the Settlement Fund after Settlement Administration Expenses and the cost of Notice, the Service Award approved by the Court, and the Fee Award and Litigation Costs awarded by the Court, approved Claims for Documented Losses will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. S.A. ¶ 56c.

***b. Alternative Cash Payment.***

In the alternative to making a Claim for Documented Losses, Settlement Class Members may elect to receive a Cash Payment. S.A. ¶ 57. The amount of the payment will be calculated by dividing the funds remaining in the Net Settlement Fund, after payment of approved Claims for Documented Losses, Settlement Administration Expenses and the cost of Notice, the Service Award approved by the Court, and the Fee Award and Litigation Costs awarded by the Court, by the number of Settlement Class Members with an Approved Claim for a Cash Payment. *Id.* The amount of the Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments. *Id.* If a residual amount remains in the Settlement Fund after the initial distribution and the expiration of the check void period, the Settlement Administrator shall, if economically feasible, make a second distribution on a *pro rata* basis to Settlement Class Members with Approved Claims who negotiated their initial Settlement Payments. S.A. ¶ 58. Any amount remaining thereafter shall be

paid to the Cy Pres Recipient, the Electronic Privacy Information Center (EPIC), subject to Court approval, to ensure no funds revert to Quatrro. S.A. ¶¶ 24, 58.

***c. Credit Monitoring Services.***

All Settlement Class Members who submit a valid and timely Claim Form electing Credit Monitoring Services are eligible to receive two (2) years of CyEx one-bureau Credit Monitoring Services. S.A. ¶¶ 23, 55. Defendant shall pay for the Credit Monitoring Services on a claims-made basis, separate from and in addition to the Settlement Fund. *Id.* The cost of Credit Monitoring Services shall not be paid from, and shall not reduce, the Settlement Fund or the Net Settlement Fund. S.A. ¶ 55.

***d. Information Security Improvements.***

Quatrro represents that it has taken and will continue to take reasonable measures to harden the security of the environment impacted by the Data Incident. S.A. ¶ 60. Within thirty (30) days of the execution of the Settlement Agreement, Quatrro shall provide Class Counsel with a confidential declaration or affidavit attesting to the security-related measures that have been and/or will be implemented, and estimating the annual cost of those measures. *Id.*

***e. Service Award.***

The Class Representative may seek a Service Award of up to Three Thousand Dollars ($3,000.00), subject to Court approval, to be paid from the Settlement Fund in addition to any Settlement Payment. S.A. ¶¶ 43, 75.

**2. Scope of the Release**

In exchange for this consideration, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant and the other Released Parties from all claims arising from or related to the Data Incident at issue in this litigation. S.A. ¶¶ 40-42, 61. The release provided by Settlement Class Members is tailored to the claims that have been

pleaded or could have been pleaded in this case. Accordingly, the release includes all claims related to the Data Incident. *Id.* The Released Claims are to be construed as broadly as possible under Georgia and Eleventh Circuit law to effect complete finality over this Action. S.A. ¶ 40.

### 3. The Notice and Settlement Administration Plans

Under the Settlement Agreement, and subject to Court approval, Simpluris Class Action Administration ("Simpluris") was selected by Defendant, with the consent of Plaintiff, to be the Settlement Administrator. S.A. ¶ 45. Simpluris has considerable experience in class action settlement notice and administration, including with data breach class actions, and will provide the Notice, create and maintain the Settlement Website, receive and process Claim Forms, transmit Settlement Payments on Approved Claims, and perform such other settlement administration matters set forth in the Settlement. *Id.*; ***Exhibit 3***, Declaration of Jacob Kamenir of Simpluris Class Action Administration ("Simpluris Decl.") ¶¶ 3, 20-21, 30, 34. All fees, costs, and expenses relating to or arising out of the Notice and administering the Settlement shall be paid from the Settlement Fund. S.A. ¶ 44.

Simpluris shall perform the functions specified in the Settlement Agreement after Court approval. S.A. ¶¶ 45, 62-68. No later than fourteen (14) days after the Court's entry of a Preliminary Approval Order, Defendant shall provide to the Settlement Administrator a list of the names and mailing addresses of all potential Settlement Class Members, to the extent that such information was contained in the original list used to provide notice of the Data Incident. S.A. ¶ 64a.

The Settlement Administrator will give notice to Settlement Class Members by first-class mail and through a settlement website. The Parties have reached agreement on the form of the proposed notices and Claim Form. *See* S.A. Exhibits 1-3. Simpluris shall establish and maintain the Settlement Website which will contain relevant documents, including the Long Notice (which shall provide

comprehensive information about the settlement terms, benefits, and procedures, including instructions for how to object or opt-out of the Settlement, the process and instructions for making Claims, and the date, time, and place of the Final Approval Hearing); the Claim Form; the Settlement Agreement; relevant publicly available court documents relating to the Action; and the ability for Settlement Class Members to make Claims online and to submit documents to supplement or cure deficient Claims. S.A. ¶¶ 35, 50, 64b. The Settlement Website shall also include a toll-free telephone number, staffed with live operators during business hours, through which Settlement Class Members may contact the Settlement Administrator. S.A. ¶¶ 50, 64c.

Simpluris will also be responsible for accounting for all the claims made and exclusions requested, determining validity of claims and eligibility of Settlement Class Members, and disbursing funds from the Escrow Account directly to Settlement Class Members. S.A. ¶¶ 30, 65-67. The claims administration process, including how Claimants can dispute any claims determinations, is detailed in the Settlement Agreement. *See* S.A. ¶ 66.

**4. Attorneys' Fees and Expenses**

Any Fee Award and Litigation Costs approved by the Court will be paid from the Settlement Fund. S.A. ¶¶ 31-32, 74; Srourian Decl. ¶ 48. The Parties did not negotiate the payment of Class Counsel's attorneys' fees, costs, or expenses. S.A. ¶ 74. Class Counsel has agreed, with no consideration from Defendant, to limit its request for attorneys' fees to one-third (1/3) of the Settlement Fund, and will also separately seek reimbursement of Litigation Costs and expenses. *Id.* Plaintiff's request for the Fee Award and Litigation Costs will be filed at least twenty-one (21) days before the Objection/Exclusion Deadline and will set forth the reasons why the request for attorneys' fees is reasonable. Srourian Decl. ¶ 50; *see* Fed. R. Civ. P. 23(h)(1).

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate." *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021); *see also McGaffin v. Argos USA, LLC*, No. 4:16-cv-104, 2020 WL 1493929, at 2 (S.D. Ga. Mar. 24, 2020). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must: preliminarily approve the proposed settlement; (2) certify the class and direct notice of the proposed settlement to its members; and (3) hold a fairness hearing, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. See generally Fed. R. Civ. P. 23(e). The preliminary review should determine whether the proposed class settlement "is within the range of possible approval." Fresco v. Auto Data Direct, Inc., No. 03–61063–CIV, 2007 WL 2330895, at 4 (S.D. Fla. May 14, 2007) (citations omitted). This involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." MANUAL, § 21.662 (2012). There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes sense. Settlements resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273. Preliminary approval is warranted here.

## IV. ARGUMENT

### A. Certification of the Settlement Class is Appropriate.

The claims of a settlement class may be settled with the Court's approval. *See* Fed. R. Civ. P. 23(e). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate when common question of law or fact for plaintiffs' claims predominate over any individual issues and a showing that the class action mechanism is the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

#### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "[T]o demonstrate numerosity, plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. 2007), quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997). Here, the joinder of approximately 208,000 Settlement Class Members would be impracticable, and, thus, the numerosity element is satisfied.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Among other things, the claims turn on whether Quatrro's security environment was adequate to protect Settlement Class Members' Personal Information. Resolution of that inquiry revolves around evidence that does not vary from Settlement Class Member to Settlement Class Member, and for purposes of settlement can be fairly resolved for all Settlement Class Members at once. Courts in this circuit have previously addressed this requirement in the context of cybersecurity incident class actions and found it satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *11-12 (N.D. Ga. Mar. 17, 2020), citing* In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at* 2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement).

**3. Typicality**

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In the data breach context, this Court has found that the typicality requirement can be met because "[t]he claims are also based on the same overarching legal theory that [Defendant] failed in its common-law duty to protect their personal information." *In re Equifax*, 2020 WL 256132, at *12.*

Here, the claims all involve Quatrro's conduct toward the Settlement Class Members, and the Class Representative's claims and the Class's claims are based on the same legal theories making the Class Representative's claims typical of those of the claims of the Settlement Class.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

The Class Representative has no conflicts with the Settlement Class and has participated actively in the case. Srourian Decl. ¶ 47. Moreover, Class Counsel has significant experience in handling data privacy class actions like this one and has dedicated substantial efforts and time to prosecuting this case. *Id.* ¶¶ 34-36.

### 5. Certification under Rule 23(b)(3) is appropriate.

Plaintiff seeks to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, making a showing of manageability at trial not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial.").

### *a. Common Questions of Law and Fact Predominate.*

For purpose of settlement, the common factual and legal questions all cut to the issues at the heart of this litigation: whether Quatrro was negligent, breached its duties, and is otherwise liable when it allegedly failed to protect the highly-sensitive Personal Information of the Settlement Class. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Here, the answers to the questions of whether Quatrro was negligent and violated the law in its failure to protect Plaintiff's and the Settlement Class Members' Personal Information go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

### *b. A Class is the Superior Method of Adjudicating this Case.*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132 at 14. The Agreement provides Settlement Class Members—whose identity can be ascertained with Defendant's records—with certain relief and contains well-defined administrative procedures to ensure due

process. This includes the right of any Settlement Class Member to object to it or to request exclusion. S.A. ¶¶ 69-70. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. See Dickens v. GC Servs. Ltd. P'ship, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small given the enormous cost of litigation, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

### B. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

After it has been determined that certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class pursuant to the factors set forth in Fed. R. Civ. P. 23(e)(2). Generally, preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith

negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted).

The considerations listed in Rule 23(e)(2) are complementary with the traditional factors set forth in *Bennett v. Behring Corp.*, 737 F.2d at 986. *See Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023); *Goodman v. Columbus Reg'l Healthcare Sys.*, No. 4:21-cv-00015-CDL, 2024 WL 2963441, at *3 (M.D. Ga. June 12, 2024*) (evaluating settlement under Rule 23(e)(2) and *Bennett* factors). The *Bennett* factors include:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59, quoting *Bennett v. Behring Corp.*, 737 F.2d at 986. The Settlement warrants preliminary approval under any measure.

**1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.**

First, arm's-length negotiations conducted by competent counsel support finding that the settlement is fair. *See Cole v. Stateserv Med. of Fla., LLC*, No. 8:17-cv-829, 2018 WL 3860263, at *2* (M.D. Fla. June 19, 2018); Fed. R. Civ. P. 23(e)(2)(B) ("the proposal was negotiated at arm's length"). In this case, the Settlement was the result of arm's-length negotiations between attorneys with vast experience handling data breach class action cases. Srourian Decl. ¶¶ 10, 34-36. Settlement negotiations were informed by the Parties' exchange of confidential information regarding the Data Incident, including Quatrro's informal discovery responses summarizing the facts of the Data Incident, its recovery, restoration, and hardening measures, and the approximate number of individuals impacted. S.A. ¶ 5.

There is no evidence that any collusion or illegality existed during settlement negotiations. Srourian Decl. ¶ 10. Class Counsel supports the Settlement as fair and reasonable, and certifies that it was reached at arm's length. *Id*.

**2. The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies and, thus, warrants issuance of notice and a hearing on final approval of settlement.**

Although Plaintiff believes that the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Srourian Decl. ¶¶ 17-18. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits as Settlement Class Members can make a claim for Documented Losses (up to $3,000.00 per Settlement Class Member) or an Alternative Cash Payment (a *pro rata* share of the Net Settlement Fund), as well as two (2) years of Credit Monitoring Services paid for by Defendant separate from and in addition to the $2,080,000.00 non-reversionary Settlement Fund. S.A. ¶¶ 49, 55-57. There are no grounds to doubt the fairness of the Settlement or other obvious deficiencies.

**3. The Bennett factors support preliminary approval.**

The *Bennett* factors each point towards preliminary approval. *First*, the benefits of settlement outweigh the risk of trial. Here, Settlement Class Members can claim Documented Losses (up to $3,000.00 per Settlement Class Member) or an Alternative Cash Payment (a *pro rata* share of the Net Settlement Fund). S.A. ¶¶ 56-57. These benefits are carefully tailored to address the harms stemming from the disclosure of the Settlement Class Members' data in the Data Incident. Additionally,

Settlement Class Members may claim two (2) years of Credit Monitoring Services paid for by Defendant separately from the Settlement Fund. S.A. ¶¶ 23, 55.

As this Court noted when approving the *Equifax* settlement, data breach cases face unique risks. *See In re Equifax*, 2020 WL 256132, at *7 (discussing duty arguments)*. Although Plaintiff believes he has strong arguments to counter these potential arguments, the Settlement's benefits outweigh the risk of trial.

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at 6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiff could recover at trial and the likelihood of success. Columbus Drywall, 258 F.R.D. at 559. Here, the Settlement provides for benefits that are carefully tailored to address the harms experienced by Plaintiff and the Settlement Class as a result of the Data Incident, and which also seek to address the damages they would be entitled to at trial. Settlement Class Members have the ability to make a claim for Documented Losses (up to $3,000.00 per Settlement Class Member) or an Alternative Cash Payment (a pro rata share of the Net Settlement Fund), in addition to Credit Monitoring Services. S.A. ¶¶ 55-57.

Fourth, continued litigation would be lengthy and expensive. As discussed in the first prong of the *Bennett* factors, data breach litigation is often difficult and complex. A settlement here is beneficial to all parties, including the Court. *See Gunthert v. Bankers Standard Ins. Co.*, No. 5:16-cv-00021-MTT, 2019 WL 1103408, at *3* (M.D. Ga. Mar. 8, 2019) (class actions "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive[.]") (citation omitted).

Fifth, there has not been any opposition to the Settlement to date. This factor is better considered after notice has been provided to Settlement Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 560. Thus, at this point, this factor should not weigh heavily in the analysis.

Sixth, Plaintiff has sufficient information to evaluate the merits of his case and negotiate a fair, adequate, and reasonable settlement. The case has been thoroughly investigated by Class Counsel, who is experienced in data breach litigation. Srourian Decl. ¶¶ 14, 34-36. The Parties' Counsel are experienced litigators in consumer protection, data privacy, and data breach litigation. S.A. ¶ 5. The Parties exchanged confidential information related to the Data Incident, including informal discovery responses summarizing the facts based on the investigation into the Data Incident, Quatrro's recovery and restoration process and hardening measures, and the approximate total number of individuals impacted by the Data Incident. *Id.* This exchange enabled the Parties to assess the case and meaningfully engage in arm's-length settlement negotiations. *Id.*

**4. There Are No Agreements That Require Disclosure Under Rule 23(e)(3).**

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no agreements with Quatrro other than the Settlement Agreement, which weighs in favor of finding that the settlement is fair and adequate.

**5. The Equitable Treatment of Settlement Class Members Relative to Each Other.**

"[T]he text of the [Rule 23(e)(2)(D)] requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1093 (11th Cir. 2023) (rejecting objector's argument). Each Settlement Class Member is eligible to receive

the same benefits pursuant to the harm they experienced, and no Settlement Class Member is favored over another.

Accordingly, the Court should find that the proposed Settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### C. The Court Should Appoint the Proposed Class Representative, Class Counsel, and Settlement Administrator.

Plaintiff Jimmy Kashanian seeks to be appointed to serve as Class Representative for the Settlement Class. Plaintiff has fulfilled his duties and obligations as Class Representative. He stayed informed about this litigation, responded to requests for information from Class Counsel, reviewed and approved major case filings, remained available for consultation throughout settlement negotiations, reviewed and approved the Settlement, and spent sufficient time and effort protecting the Settlement Class's interests. Srourian Decl. ¶ 47. He has no conflicts with the Settlement Class he seeks to represent. *Id.*

Moreover, the Class Representative is committed to continuing to vigorously prosecute this case, including overseeing the notice program, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because he is an adequate representative, the Court should appoint Plaintiff as Class Representative for the Settlement Class. Additionally, for the reasons previously discussed with respect to adequacy of representation, the Court should designate Daniel Srourian of Srourian Law Firm, P.C. as Class Counsel pursuant to Fed. R. Civ. P. 23(g). S.A. ¶¶ 20, 52.

Finally, the Parties have agreed, subject to the Court's approval, that Simpluris Class Action Administration shall act as Settlement Administrator. Simpluris and its principals have a long history of successful settlement administrations in class actions. S.A. ¶ 45; Simpluris Decl. ¶¶ 3, 20.

### D. <u>The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved.</u>

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citation omitted). The best practicable notice is that which is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed notice program provides the best notice practicable under the circumstances. The Notice will be disseminated to all persons who fall within the definition of the Settlement Class. S.A. ¶ 64. Quatrro shall provide the Settlement Administrator with available contact information for Settlement Class Members, *i.e.*, the class list, within fourteen (14) days after entry of the Preliminary Approval Order. S.A. ¶ 64a. As set forth in the Settlement Agreement, notice of the Settlement will be provided by a single postcard via U.S. mail no later than thirty (30) days following entry of the Preliminary Approval Order. S.A. ¶¶ 35-36, 64d. For ease of claim submission, the postcard will contain a detachable tear-off Claim Form, such that Settlement Class Members can easily submit their claims. S.A. ¶¶ 19, 35. The postcard will also direct Settlement Class Members to the Settlement Website, where Class Members can view the Long Notice and make claims electronically, including claims that require documentation, such as claims for Documented Losses. S.A. ¶¶ 35, 50. Prior to mailing, the Settlement Administrator shall update the class list against the United States Postal Service National Change of Address database and

shall promptly re-mail any Notice returned as undeliverable for which a forwarding address is provided. S.A. ¶ 64d. Finally, Simpluris will administer the Settlement Website and toll-free number providing important and up-to-date information about the Settlement. S.A. ¶¶ 50, 64b-c; Simpluris Decl. ¶¶ 20, 30, 32.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notice program satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund plus reimbursement of Litigation Costs. Additionally, the fee motion will be posted on the Settlement Website upon filing. S.A. ¶ 50.

The Notice complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the notice program and Notice are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *9* (S.D. Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns

of due process). Thus, the notice program should be approved. Fed. R. Civ. P. 23(c)(2)(A).

**E. The Court Should Approve a Settlement Schedule**

Plaintiff requests that the Court set a settlement schedule that would include, *inter alia*, deadlines for notice to Settlement Class Members; for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the [Proposed] Preliminary Approval Order submitted herewith as ***Exhibit 4***. The Court will determine through the Final Approval Hearing whether the Settlement should be finally approved.

**CONCLUSION**

For these reasons, Plaintiff and Class Counsel respectfully ask the Court to enter an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted this 8th day of September, 2026.

*/s/ Daniel Srourian*
Daniel Srourian (*Admitted Pro Hac Vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
daniel@slfla.com

M. Brandon Smith
Georgia Bar No. 141418
**CHILDERS SCHLUETER & SMITH LLC**
1932 North Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Telephone: 404-419-9500
bsmith@cssfirm.com

*Counsel for Plaintiff and the Proposed Settlement Class*

**LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: September 8, 2026.

*/s/ Daniel Srourian*
Daniel Srourian (*Admitted Pro Hac Vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record.

This 8th day of September 2026.

*/s/ Daniel Srourian*
Daniel Srourian (*Admitted Pro Hac Vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
daniel@slfla.com

# EXHIBIT 1

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between QUATRRO BUSINESS SUPPORT SERVICES, INC. ("Quatrro" or "Defendant") and JIMMY KASHANIAN ("Plaintiff"), individually and on behalf of the Settlement Class, in the case of *JIMMY KASHANIAN v. QUATRRO BUSINESS SUPPORT SERVICES, INC.*, Case No. 1:26-cv-01800-TWT, pending in the United States District Court for the Northern District of Georgia. Quatrro and Plaintiff are each referred to as a "Party" and are collectively referred to herein as the "Parties."

## I. FACTUAL BACKGROUND AND RECITALS

1. Quatrro experienced a data security incident in which one or more unauthorized third parties gained access to Quatrro's network environment, and to files containing the Personal Information of individuals whose information Quatrro maintained, approximately between November 11, 2025, and November 19, 2025. Quatrro discovered the unauthorized access on December 7, 2025 (the "Data Incident").

2. During the Data Incident, one or more unauthorized third parties accessed Settlement Class Members' sensitive data including, but not limited to, full name, health insurance policy number, and Social Security number. Plaintiff Jimmy Kashanian is a former employee of Quatrro who was required to provide his Personal Information to Quatrro as a condition of his employment, and Quatrro retained that Personal Information in its systems at the time of the Data Incident.

3. On or about March 23, 2026, Quatrro began sending notices of the Data Incident to those individuals whose Personal Information may have been impacted.

4. On April 3, 2026, Plaintiff filed a Class Action Complaint against Quatrro in the United States District Court for the Northern District of Georgia alleging the following causes of action: (1) Negligence; (2) Negligence Per Se; (3) Breach of Confidence; (4) Breach of Implied Contract; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Breach of Fiduciary Duty; and (7) Unjust Enrichment.

5. The Parties' Counsel are experienced litigators in consumer protection, data privacy, and data breach litigation. The Parties exchanged confidential information related to the Data Incident that allowed the Parties to assess all aspects of the case and meaningfully engage in arms-length settlement negotiations. Quatrro provided informal discovery responses that included a summary of the facts based on the investigation into the Data Incident as well as its recovery and restoration process and hardening measures. Quatrro also provided and directed Plaintiff to information regarding the approximate total number of individuals impacted by the Data Incident and represented that the Settlement Class contains approximately 208,000 individuals.

6. On August 12, 2026, the Parties reached a settlement, the material terms of which were memorialized in a binding term sheet, following arms-length negotiations. Plaintiff and Class Counsel conducted a comprehensive examination of the law and facts relating to the allegations in the Action (defined below) and Quatrro's potential defenses. Plaintiff believes that the claims

asserted in the Action have merit, that they would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class, and that they would have prevailed on the merits at summary judgment or trial.

7. However, Plaintiff and Class Counsel recognize that Quatrro has raised factual and legal defenses in the Action that presented a significant risk that Plaintiff may not prevail and/or that a class might not be certified for trial. Class Counsel has also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as difficulty and delay inherent in such litigation.

8. Plaintiff and Class Counsel believe that this Agreement presents an exceptional result for the Settlement Class, and one that will be provided to the Settlement Class without delay. Plaintiff and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and based on good faith negotiations, and in the best interests of Plaintiff and the Settlement Class. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and forever barred pursuant to the terms and conditions set forth in the Settlement Agreement.

9. Quatrro denies all material allegations in the Action, including any allegations of negligence, fault, wrongdoing or liability, and believes that it would have prevailed on the merits and that a class would not be certified for trial. Nevertheless, Quatrro has similarly concluded that this settlement is desirable to avoid the time, risk, and expense of defending protracted litigation, and to avoid the risk posed by the Settlement Class's claims. Quatrro thus desires to resolve finally and completely the pending and potential claims of Plaintiff and the Settlement Class. This Agreement shall not be construed as an admission of any wrongdoing, liability, or fault on the part of Quatrro. Furthermore, neither this Agreement nor any of its terms shall be offered or received as evidence of an admission or concession of liability, wrongdoing, or the propriety of class certification in this or any other proceeding.

10. WHEREAS, pursuant to these terms, which are set forth fully below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, in the Action against Quatrro and the Released Parties (defined below) arising out of or relating to the Data Incident, by and on behalf of the Class Representative and Settlement Class Members (defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Quatrro relating to the Data Incident.

11. NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and Defendant that, subject to the approval of the Court after a hearing as provided for in this Settlement Agreement, and in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice or that judgment be entered in accordance with the settlement terms, upon and subject to the terms and conditions set forth in this Settlement Agreement.

## II. DEFINITIONS

In addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

12. **"Action"** means the case captioned *JIMMY KASHANIAN v. QUATRRO BUSINESS SUPPORT SERVICES, INC.*, Case No. 1:26-cv-01800-TWT pending in the United States District Court for the Northern District of Georgia.

13. **"Affiliated Customers, Clients and Businesses Partners"** means all entities who are current or former customers, clients or business partners of Quatrro Business Support Services, Inc. who were the owner or controller of data impacted in the Data Incident.

14. **"Agreement"** or **"Settlement Agreement"** or **"Settlement"** means this Settlement Agreement and Release and the attached Exhibits.

15. **"Approved Claim(s)"** means a Claim Form submitted by a Settlement Class member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, (b) is fully completed and physically or electronically signed by the Settlement Class Member, and (c) satisfies the conditions of eligibility for a Settlement Payment as set forth in this Agreement and approved by the Settlement Administrator.

16. **"CAFA Notice"** means Class Action Fairness Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

17. **"Claimant"** means an individual who has submitted a Claim Form.

18. **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or submitted on the Settlement Website to be considered timely and shall be set as a date no later than ninety (90) days following the date the Notice is mailed to the Settlement Class, subject to Court approval. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, as well as in the Notice and the Claim Form.

19. **"Claim Form"** means the form which will be agreed upon by the Parties prior to seeking preliminary approval of this Settlement that Settlement Class Members may submit to obtain benefits under this Settlement Agreement. The Claim Form shall be available (a) as a detachable tear-off Claim Form included with the postcard Short Notice (**Exhibit 1**) mailed to the Settlement Class, and (b) in electronic form on the Settlement Website. (**Exhibit 2)**.

20. **"Class Counsel"** means Daniel Srourian of Srourian Law Firm, P.C.

21. **"Class Representative"** or **"Plaintiff"** means the named Plaintiff in the Action, Jimmy Kashanian.

22. **"Court"** means the United States District Court for the Northern District of Georgia and any Judge assigned to the Action.

23. **“Credit Monitoring Services”** means two (2) years of CyEx one-bureau credit monitoring, which Defendant shall pay for on a claims-made basis, separate from and in addition to the Settlement Fund, for each Settlement Class Member who submits a valid and timely Claim Form electing Credit Monitoring Services.

24. **“Cy Pres Recipient”** means Electronic Privacy Information Center (EPIC).

25. **“Data Incident”** means the data security incident in which one or more unauthorized third parties gained access to Quatrro’s network environment, and to files containing Personal Information, between approximately November 11, 2025, and November 19, 2025, and which Quatrro discovered on December 7, 2025, as described in the Action.

26. **“Defendant”** means Quatrro Business Support Services, Inc.

27. **“Defendant’s Counsel”** or “**Quatrro’s Counsel”** means John Babione of Constangy, Brooks, Smith & Prophete, LLP.

28. **“Documented Losses”** means documented out-of-pocket costs or expenditures that a Settlement Class Member actually and reasonably incurred that are fairly traceable to the Data Incident, and that have not already been reimbursed by a third party.

29. **“Effective Date”** means the date when the Settlement Agreement becomes final, which is one business day following the later of the following in the event if there are one or more objections made to the Settlement: (i) thirty (30) days after the time expires for filing or noticing any appeal of the Final Approval Order; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award or Service Award, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Final Approval Order. If there are no objections made to the Settlement, the Effective Date is one day after the Final Approval Order is entered by the Court.

30. **“Escrow Account”** means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to Class Counsel and Defendant at a depository institution insured by the Federal Deposit Insurance Corporation. The money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (a) demand deposit accounts and/or (b) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. Any interest earned on the Escrow Account shall inure to the benefit of the Settlement Class as part of the Settlement Payment, if practicable. The Settlement Administrator shall be responsible for all tax filings with respect to the Escrow Account.

31. **“Fee Award”** means the amount of attorneys’ fees awarded to Class Counsel by the Court to be paid out of the Settlement Fund.

32. **"Litigation Costs"** means the amount of litigation costs awarded to Class Counsel by the Court to be paid out of the Settlement Fund.

33. **"Final Approval Hearing"** means the hearing before the Court where Plaintiff will request that the Final Approval Order be entered by the Court finally approving the Settlement as fair, reasonable, adequate, and approving the Fee Award, awarding Litigation Costs, and the Service Award to the Class Representative.

34. **"Net Settlement Fund"** means the non-reversionary cash Settlement Fund of Two Million Eighty Thousand Dollars ($2,080,000.00), less any Fee Award, Litigation Costs, Service Award to the Class Representative, Settlement Administration Expenses, and Taxes and Tax-Related Expenses. The Settlement Administrator must use the funds available in the Net Settlement Fund to make payments on Approved Claims. Because Defendant pays for Credit Monitoring Services separately from and in addition to the Settlement Fund, the cost of Credit Monitoring Services shall not reduce the Net Settlement Fund.

35. **"Notice"** means both the Short Notice (**Exhibit 1)** and Long Notice (**Exhibit 3)** of the proposed Settlement and Final Approval Hearing which will be agreed upon by the Parties prior to seeking preliminary approval of this Settlement, and which is to be disseminated to the Settlement Class substantially in the manner set forth in this Settlement Agreement. The Parties agree that the Notice fulfills the requirements of Due Process and Federal Rule of Civil Procedure 23 and is substantially in the form of the Exhibits attached hereto.

a. "Short Notice" means the postcard notice of this proposed class action Settlement, which shall include a detachable tear-off Claim Form, that will be mailed to Settlement Class Members via First Class U.S. Mail and will direct recipients to the Settlement Website where recipients may view the Long Notice and submit a Claim Form (**Exhibit 2)** for benefits.

b. "Long Notice" means the long form notice of settlement to be posted on the Settlement Website, providing comprehensive information about the settlement terms, benefits, and procedures.

36. **"Notice Date"** means the date by which the Notice is disseminated to the Settlement Class and shall be a date no later than 30 days following the Court's Preliminary Approval Order.

37. **"Objection/Exclusion Deadline"** means the date by which a written objection to the Settlement Agreement by a Settlement Class Member must be filed with the Court or a request for exclusion submitted by a person within the Settlement Class must be postmarked or received by the Settlement Administrator, which shall be designated as a date sixty (60) days after the Notice Date, as approved by the Court. The Objection/Exclusion Deadline will be set forth in the Notice and on the Settlement Website.

38. **"Preliminary Approval Order"** means the Court's order preliminarily approving the Agreement, certifying the Settlement Class for settlement purposes, and approving the form and manner of the Notice.

39. **"Personal Information"** means any combination of information connected to a

Settlement Class Member that was potentially impacted in the Data Incident, . It includes, but is not limited to, full name, medical information, health insurance policy number, financial account number, driver's license number, passport number, and Social Security number.

40. **"Released Claims"** shall collectively mean any and all claims and causes of action, both known and unknown, including, without limitation: negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent, or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; breach of any consumer protection statute; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Parties (defined below) based on, relating to, concerning or arising out of the Data Incident or the allegations, facts, or circumstances described in the Action. The definition of "Released Claims" shall be construed as broadly as possible under Georgia and Eleventh Circuit law to effect complete finality over this Action. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

41. **"Released Parties"** means Quatrro and Affiliated Customers, Clients and Businesses Partners and their past, present, and future assigns, associates, investors, owners, parents, subsidiaries, divisions, departments, affiliates, predecessors, successors, related or affiliated entities, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, shareholders, members, clients, heirs, agents, servants, employees, insurers, reinsurers, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on their behalf, in their capacity as such. It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

42. **"Releasing Parties"** means Plaintiff and each Settlement Class Member and their respective present or past heirs, executors, estates, administrators, assigns and agents.

43. **"Service Award"** means the award approved by the Court for the Class Representative.

44. **"Settlement Administration Expenses"** means the expenses reasonably incurred by the Settlement Administrator in or relating to administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, related tax expenses including Taxes and Tax-Related Expenses as defined herein, fees of the escrow agent, sending CAFA Notice, and other such related expenses, with all such expenses to be paid from the Settlement Fund, as approved by the Court.

45. **"Settlement Administrator"** means Simpluris Class Action Administration, the third-party settlement administrator selected by Defendant with the consent of Plaintiff, subject to approval of the Court, which will provide the Notice, create and maintain the Settlement Website, receive and process Claim Forms, transmit Settlement Payments on Approved Claims, be responsible for tax reporting, and perform such other settlement administration matters set forth herein or contemplated by the Settlement.

46. **"Settlement Class"** shall mean all living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident. The Settlement Class specifically excludes: (i) Quatrro, and its officers and directors; (ii) all persons who timely and validly request exclusion from the Settlement Class; (iii) the presiding judge, and his or her staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge. Defendant represents that the Settlement Class consists of approximately 208,000 individuals.

47. **"Settlement Class Member(s)"** shall mean each and every member of the Settlement Class, as defined above, who does not timely elect to be excluded from the Settlement Class.

48. **"Settlement Payment"** means the monetary payment from the Net Settlement Fund that a Settlement Class Member with an Approved Claim is entitled to receive, whether for Documented Losses or as an Alternative Cash Payment.

49. **"Settlement Fund"** means the non-reversionary common fund in the amount of Two Million Eighty Thousand Dollars ($2,080,000.00) that Defendant shall fund or cause to be funded for the payment of Approved Claims and all other components of the Settlement, including Settlement Administration Expenses and the cost of Notice, the Service Award, and the Fee Award and Litigation Costs, but not including Credit Monitoring Services as outlined herein, subject to Court approval. Within thirty (30) days of the later of (1) the Effective Date or (2) Defendant's receipt of the Settlement Administrator's funding instructions and Form W-9, Defendant or any other party on behalf of Defendant shall deposit Two Million Eighty Thousand Dollars ($2,080,000.00) into the Escrow Account for the purpose of completing the funding of the Settlement and its administration. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. In no event shall any amount paid by Defendant into the Escrow Account, or any interest earned thereon, revert to Defendant or any other Released Party, except if the Effective Date does not occur or Defendant exercises its right to terminate this Settlement as set forth in this Agreement. Except for Defendant's separate obligation to pay for Credit Monitoring Services on a claims-made basis as set forth in this Agreement, Defendant shall have no financial obligation other than funding the Two Million Eighty Thousand Dollar ($2,080,000.00) Settlement Fund.

50. **"Settlement Website"** means the website to be created, launched, and maintained by the Settlement Administrator, which will provide access to relevant settlement administration documents, including the Notice, relevant court filings, and the ability to submit Claim Forms online. The Settlement Website shall include a toll-free telephone number to address Settlement

Class Members' inquiries. The Settlement Website shall be live and active by the Notice Date, and the URL of the Settlement Website shall be ___________ or such other URL as the Parties may subsequently agree to.

51. **"Taxes and Tax-Related Expenses"** means: (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Quatrro or its counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund account; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

## III. SETTLEMENT CLASS CERTIFICATION

52. For purposes of the Settlement only, the Parties stipulate and agree that: (1) the Settlement Class shall be certified for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), in accordance with the definition set forth below; (2) Plaintiff shall represent the Settlement Class for settlement purposes as the Class Representative; and (3) Plaintiff's Counsel shall be appointed as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

53. Quatrro does not consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement. If the Court does not enter Final Approval of the Settlement, or if for any other reason final approval of the Settlement does not occur, is successfully objected to, or challenged on appeal, any certification of any Class will be vacated and the Parties will be returned to their positions with respect to the Action as if the Settlement Agreement had not been entered into. In the event that Final Approval of the Settlement is not achieved: (1) any Court orders preliminarily or finally approving the certification of any class contemplated by this Settlement Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (2) the fact of the settlement reflected in this Settlement Agreement, that Quatrro did not oppose the certification of a class under this Settlement Agreement, or that the Court preliminarily approved the certification of a Class, shall not be used or cited thereafter by any person or entity, including in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class.

54. Subject to Court approval, the Settlement Class shall be certified for settlement purposes only as follows:

> All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident (the "Settlement Class").

## IV. SETTLEMENT BENEFITS TO CLASS

55. **Credit Monitoring Services.** All Settlement Class Members who submit a valid and timely Claim Form electing Credit Monitoring Services are eligible to receive two (2) years of CyEx one-bureau Credit Monitoring Services. Defendant shall pay for the Credit Monitoring Services on a claims-made basis, separate from and in addition to the Settlement Fund. The cost of Credit Monitoring Services shall not be paid from, and shall not reduce, the Settlement Fund or the Net Settlement Fund.

56. **Documented Losses.** All Settlement Class Members may also submit a claim for Documented Losses, up to a maximum of Three Thousand Dollars ($3,000.00). Settlement Class Members may submit a claim for reimbursement upon presentment of reasonable Documented Losses arising from the Data Incident. Documented Losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of a Settlement Class Member's Personal Information; (ii) costs incurred on or after November 11, 2025, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

a. Settlement Class Members who elect to submit a claim for reimbursement for Documented Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name, e-mail address, and current postal address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same out-of-pocket losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise.

b. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Documented Losses reflects valid Documented Losses actually incurred that are fairly traceable to the Data Incident but may consult with Class Counsel and Defendant's Counsel together in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct

the Settlement Administrator to consider: (i) whether the timing of the loss occurred on or after November 11, 2025; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was involved in the Data Incident. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

c. If the aggregate amount of approved Claims for Documented Losses exceeds the remaining amount of the Settlement Fund after Settlement Administration Expenses and the cost of Notice, the Service Award approved by the Court, and the Fee Award and Litigation Costs awarded by the Court, approved Claims for Documented Losses will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

57. **Alternative Cash Payment.** In the alternative to making a Claim for Documented Losses, Settlement Class Members may elect to receive a Cash Payment. The amount of the payment will be calculated by dividing the funds remaining in the Net Settlement Fund after payment of approved Claims for Documented Losses, Settlement Administration Expenses and the cost of Notice, the Service Award approved by the Court, and the Fee Award and Litigation Costs awarded by the Court, by the number of Settlement Class Members with an Approved Claim for a Cash Payment. The amount of the Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments.

58. If, despite the best efforts of the Settlement Administrator, a residual amount remains in the Settlement Fund after the initial distribution and the expiration of the check void period, the Settlement Administrator shall, if economically feasible, make a second distribution on a pro rata basis to Settlement Class Members with Approved Claims who negotiated their initial Settlement Payments. Any amount remaining thereafter shall be paid to the Cy Pres Recipient, subject to Court approval, to ensure no funds revert to Quatrro.

59. All Settlement Class members who fail to timely submit a claim for any benefits hereunder within the time frames set forth within, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payment or benefits pursuant to the Settlement set forth within, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment.

60. **Information Security Improvements.** Quatrro represents that it has taken and will continue to take reasonable measures to harden the security of the environment impacted by the Data Incident. Within thirty (30) days of the execution of this Agreement, Quatrro shall provide Class Counsel with a confidential declaration or affidavit attesting to the security-related measures that have been and/or will be implemented, and estimating the annual cost of those measures, in order to enable Plaintiff to represent to the Court regarding the value of those measures, but without revealing any technical details whatsoever that may pose any risk to Quatrro's security. The declaration or affidavit shall be treated as confidential by Class Counsel and may be submitted to

the Court under seal or in camera as the Court may direct.

## V. RELEASE

61. **Release:** Upon the Effective Date, each Settlement Class Member, including the Class Representative, shall be deemed to have, and by operation of the final judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all Released Parties. Further, upon the date the judgment becomes final, and to the fullest extent permitted by law, each Settlement Class Member, including the Class Representative, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from instituting, maintaining, or prosecuting any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Incident; or (b) any of the alleged violations of laws or regulations cited in the Action, and from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims is asserted.

## VI. ADMINISTRATION OF THE SETTLEMENT AND CLASS NOTICE

62. **Notice to the Settlement Class:** The Settlement Administrator shall provide notice to the Settlement Class Members and administer the Settlement under the Parties' supervision and subject to the exclusive jurisdiction of the Court.

63. In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present the Notice Plan to the Court for approval, which shall advise the Settlement Class Members of their rights under the Settlement, including the right to be excluded from or object to the Settlement Agreement or its terms. In accordance with the objection procedures set forth below, the Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the person making an objection shall file notice of his or her intention to do so and at the same time (a) files copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) files copies of such papers through the Court's electronic filing system if the objection is from a Settlement Class Member represented by counsel, who must also file an appearance, and (c) sends copies of such papers via e-mail, U.S. mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

64. Dissemination of the Notice shall be accomplished by the Settlement Administrator and shall comply with the following:

a. *Settlement Class Member Information*: Defendant warrants that it has name and mailing address contact information for the Settlement Class Members in the same manner and same extent as it had such information to send notice of the Data Incident . No later than fourteen (14) days after entry of

the Preliminary Approval Order, Defendant will provide the Settlement Administrator with a list of the names and mailing addresses of all potential Settlement Class Members, to the extent that such information was contained in the original list used to provide notice of the Data Incident.

b. *Settlement Website*: Prior to the dissemination of the Notice, the Parties agree to direct the Settlement Administrator to create a Settlement Website dedicated to providing information related to the Action and this Settlement, including the Notice contained within **Exhibit 2**. This Settlement Website will include the information in the Notice, access to relevant publicly available court documents relating to the Action and provide Settlement Class Members with the ability to make Claims and allow Settlement Class Members to submit documents to supplement or cure deficient Claims. The Settlement Website shall include a toll-free telephone number to address Settlement Class Members' inquiries.

c. *Settlement Toll Free Number*: The Settlement Administrator shall establish and maintain a toll-free telephone number with information relevant to this Settlement staffed with live operators during business hours.

d. *Direct Notice*: The Settlement Administrator shall provide Notice directly by First Class U.S. Mail to the Settlement Class no later than thirty (30) days following entry of the Order granting Preliminary Approval. Direct notice shall be in the form of a postcard Short Notice that includes a detachable tear-off Claim Form. Prior to mailing, the Settlement Administrator shall update the class list against the United States Postal Service National Change of Address database, and shall promptly re-mail any Notice returned as undeliverable for which a forwarding address is provided. Notice shall be substantially completed within fifteen (15) days of the Notice Date.

The administration of the Settlement is defined as the approval of the form of notice program and all related forms; creation and maintenance of Settlement Website; creation and maintenance of a toll free number; day-to-day administration of the Settlement, including responding to Settlement Class member inquiries; delivery to the Parties of any requests for opt-outs or objections; communications to the Parties about any issues that may arise; and the preparation of an Affidavit of Fairness of the Notice Program to be submitted to the Court with the Motion for Final Approval. The notice program shall be designed to provide maximum clarity and ease of Claim submission.

65. **Maintenance of Records:** The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide weekly reports to Class Counsel and Defendant's Counsel with information concerning the Notice, the number of Claim Forms submitted, the number of Approved Claims, any requests for exclusion, and the

administration and implementation of the Settlement. The Settlement Administrator shall make available for inspection by Defendant's Counsel all of the Approved Claim Forms received by the Settlement Administrator at any time upon reasonable notice. The Settlement Administrator shall confirm whether an individual submitted an Approved Claim Form upon request by Class Counsel. The Settlement Administrator shall make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms for denied Claimants received by the Settlement Administrator at any time upon reasonable notice. Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a post-distribution accounting of all amounts from the Settlement Fund paid to Settlement Class Members, the number and value of checks not cashed, the number and value of electronic payments unprocessed, and the amount distributed to any *cy pres* recipient.

66. **Processing Claim Forms:** The Settlement Administrator shall administer the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner. The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse, fraud, and plausibility and deny Claim Forms where there is evidence of abuse or fraud. The Settlement Administrator shall determine whether a Claim Form submitted by a Settlement Class Member is an Approved Claim and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or the terms of this Agreement, or (b) provide full and complete information as requested on the Claim Form. In the event a person submits a timely Claim Form by the Claims Deadline, but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such person reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than twenty-eight (28) calendar days after the Claims Deadline. The Settlement Administrator shall promptly notify the Claimant via the email address provided by the Claimant if one is available, of any Claim Forms rejected in whole or in part and provide its reasons. In the event the Settlement Administrator does not receive such information within twenty-eight (28) calendar days after the Claims Deadline, then any such claim shall be denied in whole or in part. The Settlement Administrator may contact any person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form. Any Claimant may dispute the Settlement Administrator's determination regarding their Claim Form. The Settlement Administrator shall advise the Parties of any such disputes and provide enough information to the Parties so they can provide their position on the dispute, if they so choose. The Settlement Administrator will have the final determination as to the viability of any Claim Form submitted.

67. **Timing of Settlement Payments:** The Settlement Administrator shall make Settlement Payments contemplated in this Settlement Agreement to all Settlement Class Members with Approved Claims, who, if necessary, have completed required tax forms, within thirty (30) days after the Effective Date. Settlement Payments issued in the form of a check shall be void one hundred eighty (180) days after the date of issuance.

68. **Tax Reporting:** The Settlement Administrator shall be responsible for all tax filings related to the Escrow Account and making any required "information returns" as that term is used in 26 U.S.C. § 1 *et seq.* Neither Class Counsel nor Defendant and Defendant's counsel make any representations regarding the tax treatment of the Settlement Fund nor is Defendant or Defendant's counsel responsible for the tax treatment to the Settlement Payments received by any Settlement Class Member.

69. **Right to Object:** Any person in the Settlement Class who intends to object to this Settlement Agreement must present the objection in writing, which must be personally signed by the objector and must include: (a) the objector's full name and current address, (b) a statement that he or she believes himself or herself to be a member of the Settlement Class, (c) whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, (d) the specific grounds for the objection, (e) all documents or writing that the objector desires the Court to consider, (f) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, and (g) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek *pro hac vice* admission).

In addition, for any objection made with the assistance of any attorney, law firm staff, or other person who may profit from the pursuit of the objection to be valid, the objection must include the following: (a) a written statement of any legal support for such objection; (b) copies of any papers, briefs, or other documents upon which the objection is based that the objector wishes the judge to consider when reviewing the objection; (c) a list of all persons who will be called to testify in support of the objection, if any; and (d) a detailed list of any other objections and any orders pertaining to the prior objections, the objector, or his or her counsel or other person who may profit from the pursuit of the objection submitted in any action in the previous five (5) years. If the Class Member or his or her counsel or other person who may profit from the pursuit of the objection has not objected to any other class action Settlement in the previous five (5) years, he, she, or it shall affirmatively state so in the written materials provided in connection with the objection to this Settlement.

Any person in the Settlement Class who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Paragraph and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, shall be foreclosed from seeking any review of this Settlement Agreement or the Final Approval Order by appeal or other means, and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action in any other action or proceeding. In order to be considered timely, objections must be actually filed with the Court by the deadline stated in the Notice.

70. **Right to Request Exclusion:** Any person in the Settlement Class may submit a request for exclusion from the Settlement on or before the Objection/Exclusion Deadline. To be valid, any request for exclusion must (a) be in writing; (b) identify the case name *JIMMY KASHANIAN v. QUATRRO BUSINESS SUPPORT SERVICES, INC.*, Case No. 1:26-cv-01800-TWT (c) state the full name and current address of the person in the Settlement Class seeking exclusion; (d) be signed by the person(s) seeking exclusion; and (e) be postmarked or received by the Settlement Administrator on or before the Objection/Exclusion Deadline. However, when a request for exclusion is missing information, the Settlement Administrator shall contact the person seeking exclusion and give them an opportunity to provide the missing information, which must be provided within twenty-eight (28) days of the Claims Deadline. Any person who timely elects to request exclusion from the Settlement Class shall not (a) be bound by any orders or the Final Approval Order entered in the Action, (b) receive a Settlement Payment under this Settlement

Agreement, (c) gain any rights by virtue of this Settlement Agreement, or (d) be entitled to object to any aspect of this Settlement Agreement or the Final Approval Order or Alternative Approval Order (as defined below). No person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

## VII. PRELIMINARY APPROVAL AND FINAL APPROVAL

71. Plaintiff, through Class Counsel, shall submit this Settlement Agreement, together with its exhibits, to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Settlement Agreement, certification of the Settlement Class, appointment of Class Counsel and the Class Representative, and entry of the Preliminary Approval Order, which order shall seek a Final Approval Hearing date and approve the Notices and Claim Form for dissemination in accordance with the Notice Plan.

72. At the time of the submission of this Settlement Agreement to the Court as described above, the Parties shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

73. The Class Representative, on behalf of the Settlement Class, or Defendant, shall have the right to terminate this Agreement by providing written notice of the election to do so to Class Counsel or Defendant's Counsel within ten (10) days of any of the following events: (i) the Court's refusal to enter the Preliminary Approval Order approving of this Agreement in any material respect; (ii) the Court's refusal to enter the Final Approval Order in this Action in any material respect; (iii) the Court's refusal to enter a final judgment in this Action in any material respect; (iv) the date upon which the Final Approval Order is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Approval Order is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. The Party who elects to terminate this Agreement shall be exclusively responsible for payment of the Settlement Administrator's costs/fees incurred up to the point of termination. Quatrro shall have the right, but not the obligation, to terminate this Agreement by providing written notice of the election to do so to Class Counsel within ten (10) days after the Settlement Administrator notifies the Parties that 250 or more members of the Settlement Class have objected to the Settlement and/or submitted a timely request for exclusion from the Settlement. Upon such an election by Quatrro, the termination of the Settlement will be treated as though Final Approval was not obtained. If this Settlement Agreement is terminated or fails to become effective for the reasons set forth above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Approval Order or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Settlement Agreement had never been entered into.

## VIII. SERVICE AWARDS AND CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

74. The Parties did not negotiate the payment of Class Counsel's attorneys' fees, costs, or expenses. Class Counsel may make a motion for a Fee Award and Litigation Costs for reasonable attorneys' fees and unreimbursed expenses incurred in the Action, to be paid from the

Settlement Fund. The amount of the Fee Award shall be determined by the Court based on a motion for such from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request for attorneys' fees to one-third (1/3) of the Settlement Fund. Class Counsel will also separately seek reimbursement of their Litigation Costs and expenses, in addition to the attorneys' fees requested, to be paid from the Settlement Fund. Payment of the Fee Award and Litigation Costs shall be made from the Settlement Fund within ten (10) days after the Effective Date, and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund and be distributed to Settlement Class Members with Approved Claims as Settlement Payments. The amount of attorneys' fees, costs, and expenses to be awarded shall be a matter of complete discretion of the Court upon consideration of the complete factual record before the Court at the Final Approval Hearing.

75. In recognition of Plaintiff's efforts on behalf of the Settlement Class, and subject to Court approval, Class Counsel may apply to the Court for an award for the Class Representative of up to Three Thousand Dollars ($3,000) from the Settlement Fund ("Service Award"), in addition to any Settlement Payment pursuant to this Settlement Agreement. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund and be distributed to Settlement Class Members as Settlement Payments. Any Service Awards shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent care of Class Counsel), within twenty-five (25) business days after the Effective Date.

## IX. SETTLEMENT DEADLINES AND STAY OF PROCEEDINGS

76. **Settlement Schedule:** Subject to Court approval, the Parties agree to the following deadlines: (a) Notice shall be disseminated no later than thirty (30) days after entry of the Preliminary Approval Order; (b) the Claims Deadline shall be ninety (90) days from the date the Notice is mailed to the Settlement Class; and (c) the Objection/Exclusion Deadline shall be sixty (60) days from the date the Notice is mailed to the Settlement Class.

77. **Notice of Settlement and Stay of Related Proceedings:** Upon execution of the term sheet memorializing this Settlement, Class Counsel shall file a notice of settlement in all pending class action lawsuits arising from the Data Incident and shall thereafter file a motion to dismiss or stay all currently pending class action lawsuits arising out of the Data Incident pending the drafting of this Settlement Agreement, the Notice, the motion for preliminary approval, the ensuing Court hearings, and such other efforts as may be necessary to finalize the class Settlement between the Parties in the Action. The intention of the Parties in this regard is that they shall be fully restored to the status quo ante in all respects in the event that this class Settlement is terminated or is not approved by the Court.

## X. MISCELLANEOUS PROVISIONS

78. The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this

Settlement Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of the Preliminary Approval Order and the Final Approval Order, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

79. Each signatory to this Agreement represents and warrants (a) that he, she, or it has all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

80. The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the other Settlement Class Members, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties and their attorneys agree not to assert that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis. Plaintiff, Defendant, and their respective counsel further agree not to make defamatory or disparaging remarks, comments, or statements concerning Defendant or Plaintiff in media outlets or on social media.

81. The Parties have relied upon the advice and representation of their respective counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

82. Whether the Effective Date occurs or this Settlement is terminated, neither this Settlement Agreement nor the Settlement contained herein, nor any court order, communication, act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement:

a. is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the appropriateness of class certification, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement Fund, Settlement Payment or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

b. is, may be deemed, or shall be used, offered or received against Defendant as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

c. is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of,

the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

d. is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the Settlement, this Settlement Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Settlement Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement. Moreover, if this Settlement Agreement is approved by the Court, any of the Released Parties may file this Settlement Agreement and/or the Final Approval Order in any action that may be brought against such parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

e. is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

f. is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

83. The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

84. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

85. All of the Exhibits attached to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

86. This Settlement Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and,

if the Settlement has been approved preliminarily by the Court, approved by the Court

87. Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

88. Plaintiff represents and warrants that they have not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other person or party and that they are fully entitled to release the same.

89. Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

90. This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

91. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

92. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without reference to the conflicts of law provisions thereof.

93. This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

94. Unless otherwise stated herein, any notice required or provided for under this Settlement Agreement shall be in writing and shall be sent by electronic mail or hand delivery, as follows:

If to Class Counsel:

Daniel Srourian
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
daniel@slfla.com

If to Quatrro's Counsel:

John Babione
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
230 Peachtree Street, N.W.
Suite 2400
Atlanta, Georgia 30303-1557
Tel: (317) 294-8274

jbabione@constangy.com

95. This Settlement Agreement shall be deemed executed as of the date that the last Party signatory signs the Agreement.

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JIMMY KASHANIAN, individually and as Class Representative

Signature: ______________________

Date: 08-26-26

SROURIAN LAW FIRM, P.C., as Class Counsel

By: ______________________

Print Name: Daniel Srourian

Date: August 26, 2026

QUATRRO BUSINESS SUPPORT SERVICES, INC.

By: DocuSigned by: Nate Medoff 2210A1D787794C4...

Print Name: Nate Medoff

Title: Managing Director

Date: 8/26/2026

JOHN BABIONE, as Quatrro's Counsel
Constangy, Brooks, Smith & Prophete LLP

By: ______________________

Print Name: John Babione

Date: 8/26/2026

# EXHIBIT 1

TO THE SETTLEMENT AGREEMENT

**Why am I receiving this notice?** A Settlement has been reached with Quatrro Business Support Services, Inc. ("Quatrro") in a class action lawsuit ("Settlement"). The case is about the November 2025 cyberattack on Quatrro's computers (the "Data Incident"). Files containing private information were accessed. Quatrro denies that it did anything wrong, and the Court has not decided who is right. The parties have agreed to settle the lawsuit to avoid the risks, disruption, and uncertainties of continued litigation. A copy of the Settlement is available online.

**Who is included in the Settlement?** The Court has defined the class as: "All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident."

The Court has appointed an experienced attorney, called "Class Counsel," to represent the Class.

**What are the Settlement benefits?** You can claim two years of **Credit Monitoring Services** from CyEx Financial Shield Complete, and **one** of two **cash payment** options.

If you have documented losses, you can get back up to **$3,000**.

*Instead of a cash payment for documented losses*, you can get a one-time **Alternative Cash Payment**.

Full details and instructions are available online.

**How do I receive a benefit?** If you are claiming a payment for documented losses, submit a claim online or fill out the Claim Form below. Tear at perforation, and return by U.S. Mail. Postage is already paid. For a full paper Claim Form call **(XXX) XXX-XXXX**. **Claims must be submitted online or postmarked by [Claims Deadline]**.

**What if I don't want to participate in the Settlement?** If you do not want to be part of the Settlement, you must exclude yourself by **[Opt-Out Deadline]** or you will not be able to sue Quatrro for the claims made in *this* lawsuit. If you exclude yourself, you cannot get benefits from this Settlement. If you want to object to the Settlement, you may file an objection by **[Objection Deadline].** The Settlement Agreement, available online, explains how to exclude yourself or object.

**When will the Court approve the Settlement?** The Court will hold a hearing in this case on **[FA Hearing Date]** at the **[Court Address]**, to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorney's fees of up to 1/3 of the $2,080,000 Settlement Fund; reimbursement of litigation costs; and $3,000 for the Plaintiff. You may attend the hearing at your own cost, but you do not have to.

**This notice is only a summary. Visit the settlement website online or scan this QR code for complete information.**

QR code

MD bar code

www.[SettlementWebsite].com

CaseID: [CaseID]
SIMID: «SIMID»

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL PERMIT NO 47 COSTA MESA CA

POSTAGE WILL BE PAID BY ADDRESSEE

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

**Quatrro Data Incident Settlement**
**c/o Settlement Administrator**
**P.O. Box [PO Box Number]**
**Santa Ana, CA 92799-9958**

Quatrro Data Incident Settlement
c/o Settlement Administrator
P.O. Box _____
Santa Ana, CA 92799-9958

First-Class Mail
US Postage Paid
Permit #__

***Jimmy Kashanian v. Quatrro Business Support Services, Inc.***
Case No. 1:26-cv-01800-TWT

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE NOVEMBER 2025 QUATRRO BUSINESS SUPPORT SERVICES, INC., DATA INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS AND ENTITLE YOU TO BENEFITS AND A CASH PAYMENT.**

*A court has authorized this Notice.*

*This is not a solicitation from a lawyer.*

*You are not being sued.*

LoginID: «ClaimLoginID»
PIN: «ClaimLoginPIN»

Postal Service: Please do not mark barcode

«IMbFullBarcodeEncoded»

«FirstName» «LastName»
«Address1» «Address2»
«City», «State» «Zip»

**This notice is only a summary. Visit www.[SettlementWebsite].com or scan this QR code for complete information.**

---

**Quatrro Data Incident Settlement**

⟪FirstName⟫ ⟪LastName⟫
⟪Address1⟫ ⟪Address2⟫
⟪City⟫, ⟪State⟫ ⟪Zip⟫

LoginID: ⟪ClaimLoginID⟫
PIN: ⟪ClaimLoginPIN⟫

*Complete this Claim Form, tear at perforation, and return by U.S. Mail no later than* ***[Claims Deadline]****.*
*Only one Claim Form per Class Member.*

**INSTRUCTIONS:** Use this card to submit your claim for two years of **Credit Monitoring Services** and/or the **Alternative Cash Payment**. To claim payments for documented losses, visit the settlement website at w**ww.[SettlementWebsite].com**. To request a full paper Claim Form, call **(XXX) XXX-XXXX**.

☐ Check this box to enroll in two years of **Credit Monitoring Services** from CyEx Financial Shield Complete.

Please **PRINT** your email address below (required):

☐ Check this box to claim a one-time **Alternative Cash Payment**.

How would you like to be paid:

Check ***one***: ☐ PayPal ☐ Venmo ☐ Zelle ☐ Virtual Prepaid Card ☐ Check (sent to above address)

For digital payment options, please **PRINT** your email address below:

Notify us if your contact information is different from what is shown above, or changes after submitting this form.

CaseID: [CaseID]
SIMID: «SIMID»

# EXHIBIT 2

TO THE SETTLEMENT AGREEMENT

# CLAIM FORM AND RELEASE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

*Jimmy Kashanian v. Quatrro Business Support Services, Inc.*
Case No. 1:26-cv-01800-TWT

Quatrro Data Incident Settlement
P.O. Box [PO Box Number]
Santa Ana, CA 92799

(XXX) XXX-XXXX
info@[SettlementWebsite].com
www.[SettlementWebsite].com

---

**TO BE ELIGIBLE TO RECEIVE BENEFITS FROM THIS SETTLEMENT,**
**YOU MUST BE A SETTLEMENT CLASS MEMBER.**

The court has defined the Class this way: "All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident."

**Excluded from the Settlement Class** are: (1) Quatrro and its officers, directors, and related companies; (2) anyone who validly excludes themselves from the Settlement; (3) the Judge in this case, and the Judge's family and staff; and (4) anyone who perpetrated the Data Incident.

You may submit your Claim Form through the Settlement Website, www.[SettlementWebsite].com, or by completing and signing this Claim Form.

**Claims must be postmarked by [Claims Deadline].**

Paper Claim Forms must be mailed through the United States Postal Service, so that they are postmarked **no later than [Claims Deadline]**. Please mail to:

Claims Administrator
Quatrro Data Incident Settlement
P.O. Box [PO Box Number]
Santa Ana, CA 92799

**Do not mail or deliver your Claim Form to the Court, the Settling Parties, or their counsel.**

## GENERAL INFORMATION

1. Complete information about the proposed Settlement is available at www.[SettlementWebsite].com.
2. If you submitted a request to be excluded from the Settlement, do not submit a claim.
3. Submit only one Claim Form, online or paper, per person.

## AVAILABLE BENEFITS

Quatrro has agreed to create a Settlement Fund of $2,080,000.00, and to pay for a number of Class benefits, which are explained below. All Class Members are eligible to claim two years of **Credit Monitoring Services** from CyEx Financial Shield Complete, and **one** of two **Cash Payment** options.

**CREDIT MONITORING SERVICES.** All Class Members are eligible to claim two years of CyEx Financial Shield Complete. This comprehensive service comes with $1 million of financial fraud insurance, and includes monitoring for:

- fraud or identity theft
- unauthorized financial transactions
- personal information associated with high-risk transactions

If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

**CASH PAYMENTS**

**Documented Losses.** If you incurred actual, documented out-of-pocket losses due to the Data Incident, you can get back up to **$3,000.00**. The losses must have occurred between November 11, 2025, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send proof, like bank statements or receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone are not enough to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

-***OR***-

**Alternative Cash Payment.** *Instead of* a payment for documented losses, you may claim a one-time cash payment. It is expected that a significant amount of money will remain in the Settlement Fund after all costs, fees, and Documented Losses payment have been made. This remaining money will be split equally between everyone who claims an Alternative Cash Payment.

You do not have to provide any proof or explanation to claim this payment.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

| | |
|---|---|
| Online: | www.[SettlementWebsite].com |
| By email: | info@[SettlementWebsite].com |
| By toll-free call: | (XXX) XXX-XXXX |
| By mail: | Claims Administrator<br>Quatrro Data Incident Settlement<br>c/o Settlement Administrator<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

**THE MOST EFFICIENT WAY TO SUBMIT YOUR CLAIMS IS ONLINE AT www.[SettlementWebsite].com**

You may also print out and complete this Claim Form, and submit it by U.S. mail.

An electronic image of the completed Claim Form can also be emailed to info@[SettlementWebsite].com

**Claims must be postmarked by [Claims Deadline].**

If your contact information changes after you submit your claim, notify the Claims Administrator.

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Please complete this entire section. The Claims Administrator will use this information to get in touch with you regarding your claim. If your contact information changes after you submit your claim, notify the Claims Administrator. **Please write legibly.**

**Class Member First Name** **MI**

**Class Member Last Name**

**Entity Name (if Class Member is not an individual)**

**Address 1 (street name and number)**

**Address 2 (apartment, unit, or box number)**

**City** **State** **ZIP**

**Email Address**

**Telephone Number**

\- -

**Login ID (if known)**

## II. CREDIT MONITORING SERVICES

☐ Check this box if you would like to enroll in two years of Credit Monitoring Services from CyEx Financial Shield Complete.

## III. DOCUMENTED LOSSES

☐ Check this box if you would like to claim reimbursement for documented out-of-pocket losses fairly traceable to the Data Incident. You can get back up to $3,000.00.

**DO NOT CLAIM THIS BENEFIT IF YOU ARE CLAIMING A PAYMENT FROM SECTION IV.**

*Please complete the table below, describing the supporting documentation you are submitting.*

| ***Description of Documentation Provided*** | ***Amount*** |
|---|---|
| *Example: Unauthorized bank transfer* | *$500* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL CLAIMED:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them.

## IV. ALTERNATIVE CASH PAYMENT

☐ Check this box if you want to claim a one-time cash payment. The final amount will be calculated at the end of the Claims Period.

**DO NOT CLAIM THIS BENEFIT IF YOU ARE CLAIMING A PAYMENT FROM SECTION III.**

## V. PAYMENT SELECTION

Please select **one** of the following payment options, which will be used if you are claiming a cash payment.

☐ **PAYPAL**
Email address associated with your PayPal account, if different than you provided in Section I:

☐ **VENMO**
Telephone number associated with your Venmo account, if different than you provided in Section I:
- -

☐ **ZELLE**
Email address associated with your Zelle account, if different than you provided in Section I:

OR

Telephone number associated with your Zelle account, if different than you provided in Section I:
- -

☐ **VIRTUAL PREPAID CARD**
Email address where you want to receive your prepaid card, if different than you provided in Section I:

☐ **PHYSICAL CHECK**
Payment will be mailed to the address provided in Section I above.

## VI. ATTESTATION AND SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form, including supporting documentation, is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

Class Member Signature

MM DD YY

Please print or type your name on the line above.

# EXHIBIT 3

TO THE SETTLEMENT AGREEMENT

**United States District Court**
**Northern District of Georgia**

*Jimmy Kashanian v. Quatrro Business Support Services, Inc.*
Case No. 1:26-cv-01800-TWT

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE NOVEMBER 2025 QUATRRO BUSINESS SUPPORT SERVICES, INC., DATA INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS, AND ENTITLE YOU TO BENEFITS AND A CASH PAYMENT.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with Quatrro Business Support Services, Inc. ("Quatrro" or "Defendant") in a class action lawsuit. This case is about the targeted cyberattack on Quatrro's computer systems that occurred in November 2025 (the "Data Incident"). Certain files that contained private information were accessed. These files may have contained personal information such as full name, health insurance policy number, and Social Security number.

- The lawsuit is called *Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT. It is pending in the United States District Court for the Northern District of Georgia (the "Litigation").

- Quatrro denies that it did anything wrong, and the Court has not decided who is right.

- The parties have agreed to settle the lawsuit (the "Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the Litigation.

- Quatrro's records indicate that you are a Class Member, and entitled to benefits under the Settlement. You may have received a previous notice directly from Quatrro.

- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits or payments from this Settlement is by submitting a valid and timely Claim Form.<br>The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **______, 2026** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no benefit or payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | **______, 2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for Settlement benefits. | **______, 2026** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive benefits or payments from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ........................................................................................ 3
WHO IS IN THE SETTLEMENT ........................................................................ 4
THE SETTLEMENT BENEFITS.......................................................................... 4
SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS ................................ 6
THE LAWYERS REPRESENTING YOU ................................................................ 6
EXCLUDING YOURSELF FROM THE SETTLEMENT ............................................. 7
COMMENTING ON OR OBJECTING TO THE SETTLEMENT .................................. 7
THE COURT'S FINAL APPROVAL HEARING ........................................................ 9
IF I DO NOTHING ............................................................................................ 9
GETTING MORE INFORMATION ........................................................................ 9

# Basic Information

### 1. Why was this Notice issued?

The United States District Court for the Northern District of Georgia, authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT. It is pending in the United States District Court for the Northern District of Georgia. The person that filed this lawsuit is called the "Plaintiff" (or "Class Representative") and the company they sued, Quatrro Business Support Services, Inc., is called the "Defendant."

### 2. What is this lawsuit about?

This lawsuit alleges that during the November 2025 targeted cyberattack on Quatrro's computer systems, certain files that contained private information were accessed. These files may have contained personal information such as full name, health insurance policy number, and Social Security number.

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt out from the settlement. In this Settlement, the Class Representative is Jimmy Kashanian. Everyone included in this Action are the Class Members.

## 4. Why is there a Settlement?

The Court did not decide whether the Plaintiff or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Class Members to receive benefits from the Settlement. The Plaintiff and their attorney think the Settlement is best for all Class Members.

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The court has defined the Class this way: "All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident."

## 6. Are there exceptions to being included?

Yes. Excluded from the Class are: (1) Quatrro and its officers, directors, and related companies; (2) anyone who validly excludes themselves from the Settlement; (3) the Judge in this case, and the Judge's family and staff; and (4) anyone who perpetrated the Data Incident.

If you are not sure whether you are a Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: Quatrro Data Incident Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

# The Settlement Benefits

## 7. What does the Settlement provide?

Quatrro has agreed to create a Settlement Fund of $2,080,000.00, and to pay for a number of Class benefits, which are explained below. All Class Members are eligible to claim two years of **Credit Monitoring Services** from CyEx Financial Shield Complete, and **one** of two **Cash Payment** options.

**CREDIT MONITORING SERVICES.** All Class Members are eligible to claim two years of CyEx Financial Shield Complete. This comprehensive service comes with $1 million of financial fraud insurance, and includes monitoring for:

- fraud or identity theft
- unauthorized financial transactions
- personal information associated with high-risk transactions

If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

**CASH PAYMENTS**

**Documented Losses.** If you incurred actual, documented out-of-pocket losses due to the Data Incident, you can get back up to **$3,000.00**. The losses must have occurred between November 11, 2025, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send proof, like bank statements or receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone are not enough to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

*-OR-*

**Alternative Cash Payment.** *Instead of* a payment for documented losses, you may claim a one-time cash payment. It is expected that a significant amount of money will remain in the Settlement Fund after all costs, fees, and Documented Losses payment have been made. This remaining money will be split equally between everyone who claims an Alternative Cash Payment.

You do not have to provide any proof or explanation to claim this payment.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: Quatrro Data Incident Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

## 8. What claims am I releasing if I stay in the Class?

If you stay in the class, you won't be able to be part of any other lawsuit against Quatrro about the issues that this Settlement covers. The "Release" section of the Settlement Agreement (Section V) describes the legal claims that you give up if you remain in the Class. The Settlement Agreement is available at www.[SettlementWebsite].com.

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download a printable Claim Form from the website and mail it to the Settlement Administrator at:

Quatrro Data Incident Settlement
c/o Settlement Administrator
[PO Box Number]
Santa Ana, CA 92799-9958

You may also contact the Settlement Administrator to request a Claim Form by telephone, toll free, (XXX) XXX-XXXX, by email info@[SettlementWebsite].com, or by U.S. mail at the address above.

## 10. Are there any important Settlement payment deadlines?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, including supporting documentation, must be postmarked no later than [Claims Deadline].

## 11. When will the Settlement benefits be issued?

The Court will hold a final approval hearing on [FA Hearing Date] (***see* Question 18**). If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Settlement payments will be distributed if the Court grants final approval, and after any appeals are resolved.

# The Lawyers Representing You

## 12. Do I have a lawyer in the case?

Yes, the Court has appointed attorney Daniel Srourian of Srourian Law Firm, P.C., to represent you and other Class Members ("Class Counsel").

## 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

## 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve 1/3 of the Settlement Fund as reasonable attorney's fees, plus reimbursement of litigation costs. This amount will be paid from the Settlement Fund.

Class Counsel will also ask for a Service Award Payment of $3,000.00 for the Class Representative. The Service Award Payment will also be paid from the Settlement Fund.

# Excluding Yourself from the Settlement

## 15. How do I opt out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called a Request for Exclusion, and is sometimes also called "opting out." If you opt out, you will not receive Settlement benefits or payment. However, you will keep any rights you may have to sue Quatrro on your own about the legal issues in this case.

If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you exclude yourself.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

To be valid, your Request for Exclusion must have the following information:

(1) the name of the Litigation: *Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT, pending in the United States District Court for the Northern District of Georgia;

(2) your full name and mailing address;

(3) personal signature; and

(4) the words "Request for Exclusion" or a clear and similar statement that you do not want to participate in the Settlement.

You may only exclude yourself—not any other person.

Mail your Request for Exclusion to the Settlement Administrator at:

Quatrro Data Incident Settlement
ATTN: Exclusion Request
[PO Box Number]
Santa Ana, CA 92799-9958

Your Request for Exclusion must be submitted, postmarked, or emailed by **[Opt-Out Deadline]**.

# Commenting on or Objecting to the Settlement

## 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

You cannot object if you have excluded yourself from the Settlement (***see* Question 15**)

You must provide the following information for the Court to consider your objection:

(1) the name of the Litigation: *Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT, pending in the United States District Court for the Northern District of Georgia;

(2) your full name, mailing address, telephone number, and email address;

(3) a statement that you believe you are a Class Member;

(4) whether the objection applies only to you, or to other Class Members, as well;

(5) a clear description of all the reasons you object; include any legal support, such as documents, you may have for your objection;

(6) if you have hired your own lawyer to represent you for this objection, provide their name, bar number, and contact information;

(7) if you or your lawyer have objected in any other cases in the past five years, list the names, courts, the orders ruling on your objections, and civil action numbers for each of those cases; if neither you nor your attorney has ever objected in a previous settlement, please state so explicitly;

(8) whether or not you or your lawyer would like to speak at the Final Approval Hearing;

(9) if you plan on calling witnesses or submitting documents at the Final Approval Hearing, provide a full list of both;

(10) your signature (if you have hired your own lawyer, their signature is not sufficient).

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must file your complete objection with the Clerk of Court by [**OBJECTION DATE**]. You must also send a copy of the objection to the Settlement Administrator, Class Counsel, and counsel for Defendants.

| **Clerk of the Court** | **Settlement Administrator** |
|---|---|
| Clerk of the Court<br>[Court Address] | Quatrro Data Incident Settlement<br>ATTN: Objections<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

| **Class Counsel** | **Counsel for Defendant** |
|---|---|
| Daniel Srourian<br>**SROURIAN LAW FIRM, P.C.**<br>468 N. Camden Dr., Suite 200<br>Beverly Hills, CA 90210 | John Babione<br>**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**<br>230 Peachtree Street N.W., Suite 2400<br>Atlanta, Georgia 30303-1557 |

## 17. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is

opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

# The Court's Final Approval Hearing

## 18. When is the Court's Final Approval Hearing?

The Court will hold a final approval hearing on **[FA Hearing Date] at [Hearing Time] Eastern Time**, in Room [Court Room] of the United States District Court for the Northern District of Georgia, at [Court Address].

At the final approval hearing, the Court will decide whether to approve the Settlement. The court will also decide how Class Counsel should be paid, and whether to award a Service Award Payment to the Class Representative. The Court will also consider any objections to the Settlement.

If you are a Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (***See* Question 16**).

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

## 19. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

# If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

# Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: Quatrro Data Incident Settlement

c/o Settlement Administrator
[PO Box Number]
Santa Ana, CA 92799-9958

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court, [Court Address].

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JIMMY KASHANIAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUATRRO BUSINESS SUPPORT SERVICES, INC.<br><br>Defendant. | CASE NO. 1:26-cv-01800-TWT<br><br>Hon. Thomas W. Thrash, Jr. |

**DECLARATION OF DANIEL SROURIAN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Daniel Srourian, declare as follows. I am the principal of Srourian Law Firm, P.C., counsel for Plaintiff Jimmy Kashanian and proposed Class Counsel for the Settlement Class in the above-captioned case. This declaration supports Plaintiff's Motion for Preliminary Approval of Class Action Settlement with Defendant, Quatrro Business Support Services, Inc. ("Defendant" or "Quatrro") (together with Plaintiff, the "Parties"). This declaration explains the basis for the settlement, including the significant relief it affords the Settlement Class. I have personal knowledge of the facts in this declaration and could testify to them if called on to do so.

**Factual and Procedural Background**

1. This class action arises out of a data security incident in which one or more unauthorized third parties gained access to Quatrro's network environment,

and to files containing the Personal Information of individuals whose information Quatrro maintained, approximately between November 11, 2025, and November 19, 2025 (the "Data Incident"). Quatrro discovered the unauthorized access on December 7, 2025. The Data Incident impacted the Personal Information of approximately 208,000 individuals. *See* ***Exhibit 1***, Settlement Agreement ("S.A.") ¶¶ 1, 25, 46.

2. Quatrro is a tech-enabled outsourcing firm headquartered in Marietta, Georgia, that provides strategies that streamline and strengthen operations for companies. Doc. 1, ¶¶ 35-36. As a condition of receiving employment from Quatrro, Plaintiff Jimmy Kashanian, a former employee of Quatrro, was required to provide his Personal Information to Quatrro, and Quatrro retained that Personal Information in its systems at the time of the Data Incident. S.A. ¶ 2; Doc. 1, ¶¶ 24-26.

3. During the Data Incident, one or more unauthorized third parties accessed Settlement Class Members' sensitive data including, but not limited to, full names, health insurance policy numbers, and Social Security numbers. S.A. ¶ 2. This type of personal and sensitive data is highly targeted by hackers who seek to exploit this data for nefarious purposes. Doc. 1, ¶¶ 1-9.

4. Plaintiff alleges that Quatrro was obligated to perform its business operations in accordance with industry standards and exercise reasonable care with respect to Plaintiff and the Class Members by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class Members. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a data breach. In this case, Quatrro was the only entity responsible for adequately protecting the data that it alone solicited, collected, and stored. Doc. 1, ¶¶ 54-98.

5. Plaintiff alleges that as a direct result of Quatrro operating its business with deficient security systems and security measures for handling and protecting

Class Members' data, one or more unauthorized third parties gained access to Quatrro's network environment between approximately November 11, 2025, and November 19, 2025, and accessed the Personal Information of approximately 208,000 individuals whose information Quatrro had collected and stored. Doc. 1, ¶¶ 2, 47-52; S.A. ¶¶ 1, 25.

6. On or about March 23, 2026, Quatrro began sending notices of the Data Incident to those individuals whose Personal Information may have been impacted. S.A. ¶ 3. Plaintiff received such a notice and, after an initial investigation of the Data Incident, filed this action. Doc. 1, ¶¶ 28, 50.

7. Plaintiff filed his Class Action Complaint on April 3, 2026, alleging that Quatrro failed to meet its duty and responsibility to protect the information that it collected, stored, and maintained and failed to implement adequate data security measures to protect such information against unauthorized access and disclosure. *See generally* Doc. 1. Plaintiff asserted claims for negligence, negligence per se, breach of confidence, breach of implied contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. *Id.*; S.A. ¶ 4.

**<u>The Parties Exchanged Informal Discovery</u>**

8. The Parties exchanged confidential information related to the Data Incident that allowed the Parties to assess all aspects of the case and meaningfully engage in arm's-length settlement negotiations. S.A. ¶ 5. Quatrro provided informal discovery responses that included a summary of the facts based on the investigation into the Data Incident, as well as its recovery and restoration process and hardening measures. *Id.*

9. Quatrro also provided and directed Plaintiff to information regarding the approximate total number of individuals impacted by the Data Incident, and

represented that the Settlement Class contains approximately 208,000 individuals. S.A. ¶ 5.

**Mediation, Negotiations and Settlement**

10. The Settlement came about as the result of arm's-length negotiations between counsel experienced in data breach class action litigation. There is no evidence that any collusion or illegality existed during settlement negotiations, and I certify that the Settlement was reached at arm's length.

11. Before the settlement was reached, the Parties' exchange of confidential information described above enabled Plaintiff to properly assess the strengths and weaknesses of his case and evaluate damages on a class-wide basis. That exchange informed Plaintiff about the class size, the types of data impacted in the Data Incident, and information supporting Plaintiff's liability and damages allegations. S.A. ¶ 5. The Parties also participated in a mediation session with Steven R. Jaffe, Esq. of Upchurch Watson White & Max on July 22, 2026. The Parties thoroughly prepared for the mediation and submitted mediation briefs for consideration. However, the Parties were unable to resolve the matter after a full day of mediation but continued negotiating in the weeks that followed and were able to resolve thereafter.

12. On August 12, 2026, following the informal exchange of information, mediation, and weeks of ongoing negotiations, the Parties reached a settlement, the material terms of which were memorialized in a binding term sheet. S.A. ¶ 6. Prior to and in connection with reaching the settlement, Plaintiff and Class Counsel conducted a comprehensive examination of the law and facts relating to the allegations in the Action and Quatrro's potential defenses. *Id.* Thereafter, the Parties continued to negotiate and finalize the terms of the Settlement Agreement and the exhibits to the Agreement.

13. The Settlement Agreement was finalized and signed on August 26, 2026. The Settlement Agreement is attached to the Unopposed Motion for Preliminary Approval as ***Exhibit 1***.

14. Class Counsel's efforts in investigating the Data Incident, evaluating the claims, engaging in informal discovery, and negotiating with Quatrro's Counsel have been instrumental in reaching the proposed Settlement.

## The Class Settlement

15. The informed and extended settlement negotiations described above demonstrate that the Settlement is the product of good faith, non-collusive bargaining.

16. The detailed settlement negotiations described above, conducted at arm's length by counsel experienced in data breach class actions, strongly indicate that the Settlement was reached without collusion.

17. Class Counsel and Plaintiff believe that the claims asserted in this case have merit. Class Counsel recognizes, however, the expense and length of continued proceedings necessary to prosecute the litigation against Quatrro through class certification, additional motion practice, trial, and potential appeals. I have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, including the risk that a class might not be certified for trial and the factual and legal defenses that Quatrro has raised. S.A. ¶¶ 7-9.

18. It is my belief, based on my experience generally and my investigation and research into this case in particular, that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

***The Settlement and Its Benefits***

19. The Settlement provides benefits for the individuals covered by the operative complaint. The Settlement Class is comprised of approximately 208,000 individuals in the United States. S.A. ¶ 46.

20. Defendant will provide benefits to the Settlement Class Members (as defined in the Settlement Agreement) through its provision of a non-reversionary settlement payment of Two Million Eighty Thousand Dollars ($2,080,000.00) into the Settlement Fund from which Settlement Class Members' valid claims will be paid. S.A. ¶ 49.

21. The "Net Settlement Fund" is the non-reversionary cash Settlement Fund of Two Million Eighty Thousand Dollars ($2,080,000.00), less any Fee Award, Litigation Costs, Service Award to the Class Representative, Settlement Administration Expenses, and Taxes and Tax-Related Expenses. S.A. ¶ 34. The Settlement Administrator must use the funds available in the Net Settlement Fund to make payments on Approved Claims, whether for Documented Losses or as an Alternative Cash Payment. *Id.*; S.A. ¶ 48. The Settlement Administrator, subject to such supervision and direction of the Court and the Parties as may be necessary or as circumstances may require, shall administer and oversee distribution of the Net Settlement Fund pursuant to the process set forth in the Settlement Agreement. S.A. ¶¶ 62-67.

22. Settlement Class Members may recover Documented Losses, up to a maximum of Three Thousand Dollars ($3,000.00) per Settlement Class Member. Documented Losses are documented out-of-pocket costs or expenditures that a Settlement Class Member actually and reasonably incurred that are fairly traceable to the Data Incident, and that have not already been reimbursed by a third party. Documented Losses may include, without limitation, the following: unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of a Settlement Class Member's Personal

Information; costs incurred on or after November 11, 2025, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A. ¶¶ 28, 56.

23. In the alternative to making a Claim for Documented Losses, Settlement Class Members may elect to receive an Alternative Cash Payment. The amount of the payment will be calculated by dividing the funds remaining in the Net Settlement Fund, after payment of approved Claims for Documented Losses, Settlement Administration Expenses and the cost of Notice, the Service Award approved by the Court, and the Fee Award and Litigation Costs awarded by the Court, by the number of Settlement Class Members with an Approved Claim for a Cash Payment. The amount of the Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments. S.A. ¶ 57.

24. All Settlement Class Members who submit a valid and timely Claim Form electing Credit Monitoring Services are eligible to receive two (2) years of CyEx one-bureau Credit Monitoring Services. Defendant shall pay for the Credit Monitoring Services on a claims-made basis, separate from and in addition to the Settlement Fund. The cost of Credit Monitoring Services shall not be paid from, and shall not reduce, the Settlement Fund or the Net Settlement Fund. S.A. ¶¶ 23, 55.

25. Additionally, Quatrro represents that it has taken and will continue to take reasonable measures to harden the security of the environment impacted by the Data Incident, and, within thirty (30) days of the execution of the Settlement Agreement, Quatrro shall provide Class Counsel with a confidential declaration or

affidavit attesting to the security-related measures that have been and/or will be implemented, and estimating the annual cost of those measures. S.A. ¶ 60.

26. *Claims Deadline*: Settlement Class Members must submit Claim Forms by the Claims Deadline, which shall be set as a date no later than ninety (90) days following the date the Notice is mailed to the Settlement Class, subject to Court approval. S.A. ¶¶ 18, 76. The Notice shall be disseminated no later than thirty (30) days after entry of the Preliminary Approval Order. S.A. ¶¶ 36, 76. The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object. S.A. ¶¶ 37, 76.

27. Insufficient or Excess Funds. If the aggregate amount of approved Claims for Documented Losses exceeds the remaining amount of the Settlement Fund, approved Claims for Documented Losses will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. S.A. ¶ 56c. The amount of the Alternative Cash Payments will be increased or decreased on a *pro rata* basis depending upon the number of valid claims filed and the amount of funds available. S.A. ¶ 57. If a residual amount remains in the Settlement Fund after the initial distribution and the expiration of the check void period, the Settlement Administrator shall, if economically feasible, make a second distribution on a *pro rata* basis to Settlement Class Members with Approved Claims who negotiated their initial Settlement Payments. Any amount remaining thereafter shall be paid to the Cy Pres Recipient, the Electronic Privacy Information Center (EPIC), subject to Court approval, to ensure no funds revert to Quatrro. S.A. ¶¶ 24, 58.

28. All Settlement Administration Expenses, including the cost of Notice, incurred by the Settlement Administrator or otherwise in connection with administering the Settlement will be paid from the Settlement Fund, as approved by the Court. S.A. ¶ 44.

***Release***

29. The release provided by Settlement Class Members in this case is tailored to the claims that have been pleaded or could have been pleaded in this case. Accordingly, the release includes all claims related to the Data Incident. S.A. ¶¶ 40, 61.

30. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release all claims against Quatrro and the other Released Parties related to the Data Incident. S.A. ¶¶ 41-42, 61.

31. This Settlement, if approved, would resolve all claims related to the Data Incident on behalf of the Settlement Class. S.A. ¶ 10.

***Claims Process***

32. The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. S.A. ¶¶ 18, 36-37, 76.

33. The Claim Form, Exhibit 2 to the Settlement Agreement, is written in plain language to facilitate Settlement Class Members' ease in completing it, and is available both as a detachable tear-off form included with the postcard Short Notice and in electronic form on the Settlement Website. S.A. ¶ 19.

**Counsel's Qualifications**

34. I am the principal and founder of Srourian Law Firm, P.C. Srourian Law Firm is a Los Angeles-based law firm dedicated to fighting for the rights of consumers and employees since its inception in 2013. Since its inception, Srourian Law Firm has prosecuted over one hundred wage and hour class action cases on behalf of employees, recovering millions in unpaid wages. Srourian Law Firm also currently serves as counsel of record on approximately 100 class action data breach cases across the country.

35. Judges around the country have appointed Srourian Law Firm as Lead or Co-Lead Counsel in class action data breach matters, including *Malinowski et al. v. International Business Machine Corporation, et al.* (7:23-cv-08421-NSR) (S.D. New York), a national data breach involving approximately 500,000 individuals; *Conifer et al. v. Conifer Revenue Cycle Solutions, LLC, et al.* (2:23-CV-01987 AB) (S.D.N.Y.), a national data breach involving approximately 100,000 individuals; and *Lenaway v. Octapharma Plasma, Inc.* (3:24-CV-424-MOC) (W.D.N.C.), a national data breach involving approximately 200,000 individuals; *Feathers et al. v. On Q Financial LLC* (CV-24-00811-PHX-SMB) (D. Ariz.), a national data breach involving approximately 211,000 individuals; *Capers et al. v. Hospital Sisters Health System* (2024 CH 000043) (Ill. Cir. Ct. Sangamon Cnty. Chancery Div. [2024]); *In Re Orthominds, LLC Data Breach Litigation* (1:25-cv-01565-JPB) (N.D. Ga.), a national data breach; *In Re O'Connor Corporation Data Breach Litigation,* (1:25-cv-10355-DJC) (D. Mass.); *Shuck v. Turning Point of Central California* (VCU318698) (Tulare County Superior Court); *In re KYL Data Security Litigation* (2:24-cv-10406-MEMF-JC) (C.D. Cal.); *In re Daedong-USA Data Security Incident Litigation* (5:25-cv-00216-D) (E.D.N.C.); *Losee v. Baillie Lumber Co., L.P.* (1:25-cv-00731-LJV) (W.D. New York); *Toth v. Payactiv, Inc.* (5:25-cv-08476-BLF) (N.D. Calif.); *Payne v. Full House Resorts, Inc.* (2:25-cv-2314) (Dist. Nev.); *Davidson-Salas v. NAHGA, Inc.,* (2:25-cv-00604) (D. Me.); *In re Byzfunder NY LLC Data Breach Litigation* (1:25-cv-10040) (S.D.N.Y.); *Jones v. Havco Wood Products LLC* (1:25-cv-00157-SEP) (E.D. Mo.); *Hensley v. FieldTex Products, Inc.* (6:25-cv-06768) (W.D. New York); and *In re Louis Vuitton North America, Inc. Data Breach Litigation*, (1:25-cv-7109) (S.D.N.Y.).

36. My law firm has additionally been appointed to the Plaintiff's Steering/Executive Committee for the following class action data breach cases: *Cain et al v. CGM, L.L.C* (1:23-cv-02604) (N.D. Ga.), *Hahn et al. v. Phoenician Medical*

*Center, Inc.* (CV2023-010982) (Superior Court of the State of Arizona, County of Maricopa), *Dudurkaewa v. Midfirst Bank and Midland Financial Co.* (5:23-cv-00817-R) (W.D. Okla.), *Trottier v. Sysco Corporation* (4:23-cv-01818) (S.D. Tex.), *Mathis v. Planet Home Lending, LLC* (3:24-cv-00127) (D. Conn.), *Gambino v. Berry, Dunn, McNeil & Parker, LLC* (2:24-cv-00146) (D. Me.), *Tambroni v. WellNow Urgent Care, P.C.* (1:24-cv-01595) (N.D. Ill.), and *In Re: Golden Corral Data Breach Litigation* (5:24-cv-123) (E.D.N.C.).

37. I believe my experience in data breach class action litigation has provided insight into the strengths and weaknesses of these types of cases, both legally and factually. Additionally, my involvement in previous settlements of data breach class actions has provided experience on such issues as the types of claims class members make in such settlements.

38. As a result of this experience, it is my opinion that the proposed Settlement is fair, reasonable, and adequate, and that it will provide appropriate redress for those Settlement Class Members whose information was impacted in this Data Incident.

39. My experience in briefing issues that routinely arise in data breach cases and my participation in structuring settlements in data breach matters provided valuable insight in litigating and settling the instant matter. That experience proved beneficial to negotiating a settlement on behalf of the Settlement Class that I believe is fair, reasonable and adequate and provides reasonable benefits to the Settlement Class.

**Simpluris Is Qualified to Act as the Settlement Administrator and the Notice Program is Adequate**

40. Defendant, with Plaintiff's consent, selected Simpluris Class Action Administration ("Simpluris"), a settlement administrator with experience handling

data privacy class actions and providing cost-effective services, to be the Settlement Administrator, subject to approval of the Court. S.A. ¶ 45.

41. Simpluris is a qualified class action settlement administration company. Simpluris is concurrently submitting a declaration in support of the Motion for Preliminary Approval, which provides additional information regarding Simpluris's qualifications and experience in administering class action settlements, as well as its proposed administration of the Settlement in this matter.

42. Simpluris will establish the Settlement Website prior to the dissemination of the Notice as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including the Long Notice (Exhibit 3 to the Settlement Agreement) and the Claim Form (Exhibit 2 to the Settlement Agreement), which together shall include comprehensive information about the settlement terms, benefits, and procedures, instructions for how to object or opt-out of the Settlement, the process and instructions for making Claims, and the date, time and place of the Final Approval Hearing; access to relevant publicly available court documents relating to the Action; and the ability for Settlement Class Members to make Claims online and to submit documents to supplement or cure deficient Claims. S.A. ¶¶ 35, 50, 64b. The Settlement Website shall also include a toll-free telephone number through which Settlement Class Members may contact the Settlement Administrator. S.A. ¶¶ 50, 64c.

43. The notice program in this case consists of sending each Settlement Class Member the Short Notice in the form of a postcard notice with a detachable tear-off Claim Form via First Class U.S. Mail, no later than thirty (30) days following entry of the Preliminary Approval Order. The postcard will have a summary of the Settlement and will direct recipients to the Settlement Website. Prior to mailing, the Settlement Administrator shall update the class list against the United States Postal

Service National Change of Address database, and shall promptly re-mail any Notice returned as undeliverable for which a forwarding address is provided. S.A. ¶¶ 35, 64d.

44. The Settlement Website will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, and shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically. S.A. ¶¶ 50, 64b.

45. Simpluris will also provide a dedicated toll-free help line, staffed with live operators during business hours, to provide Settlement Class Members with additional information about the settlement. S.A. ¶ 64c.

46. Through my experience of handling other class action settlements and working with settlement administrators, the reach of the notice program meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement.

**The Class Representative Is an Adequate Representative for the Settlement Class**

47. The Class Representative received notice from Defendant that his Personal Information may have been included in the Data Incident. Plaintiff has fulfilled his duties and obligations as Class Representative. He stayed informed about this litigation, responded to requests for information from Class Counsel, reviewed and approved major case filings, remained available for consultation throughout settlement negotiations, reviewed and approved the Settlement, and spent sufficient time and effort protecting the Settlement Class's interests. He has no conflicts with the Settlement Class he seeks to represent. He has and continues to vigorously prosecute this case on behalf of the Settlement Class.

**Class Counsel's Proposed Attorneys' Fees and Expenses Are Reasonable and Should Permit Preliminary Approval of Class Action Settlement**

48. Under the Settlement, Class Counsel shall submit a request to the Court for payment of the Fee Award and Litigation Costs incurred in prosecuting and settling the Action. S.A. ¶ 74.

49. The Parties did not negotiate the payment of Class Counsel's attorneys' fees, costs, or expenses. The amount of attorneys' fees, costs, and expenses to be awarded is a matter of complete discretion of the Court upon consideration of the complete factual record before the Court at the Final Approval Hearing. S.A. ¶ 74.

50. Class Counsel has agreed, with no consideration from Defendant, to limit its request for attorneys' fees to one-third (1/3) of the Settlement Fund, and will separately seek reimbursement of Litigation Costs. S.A. ¶ 74. Class Counsel shall submit a motion for the Service Award and Fee Award and Litigation Costs no later than twenty-one (21) days before the Objection/Exclusion Deadline.

51. Class Counsel has worked efficiently and committed substantial time and resources to this case. This work has included at least the following: (1) investigating the Data Incident, (2) researching and evaluating the appropriate legal claims to assert, (3) interviewing Plaintiff about his experiences, (4) preparing and filing the Class Action Complaint, (5) engaging in informal discovery and reviewing the information provided by Quatrro, (6) negotiating the proposed settlement, and (7) preparing the settlement documentation and moving for preliminary approval.

52. Class Counsel has undertaken this case on a contingency fee basis and has not received any payment for its work in this case to date and has not been reimbursed for any of its litigation expenses.

53. Courts within the Eleventh Circuit often award attorneys' fees up to 1/3 of the settlement fund amount in class action settlements. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at 5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide-roughly one-third"); *Tracy v. Elekta Inc.*, No. 1:21-cv-02851 (N.D. Ga.

Jan. 7, 2025) (Doc. 94) (awarding attorneys' fees of 1/3 of the settlement fund plus expenses in a data breach class action settlement); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga. Apr. 4, 2024) (Doc. 94) (approving fee request of 1/3 of the settlement fund plus expenses in a data breach class action settlement); *Abrams v. Savannah College of Art & Design, Inc.*, No. 1:22-cv-4297 (N.D. Ga. Sept. 22, 2023) (Doc. 29) (approving fee request of 1/3 of the settlement plus expenses in a data breach class action settlement); *Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*, No. 1:18-cv-02688-MLB, 2020 WL 10935986, at *4 (N.D. Ga. June 3, 2020) ("The fee represents one-third of the $15 million cash settlement fund, which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Waters v. Int'l Precious Metals, Corp.*, *190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming attorneys' fees of 1/3 of the $40 million settlement fund);* Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 WL 12740375, at* 15 (N.D. Ga. May 19, 2014) (fee award of 1/3 of the settlement fund); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61217-CIV, 2018 WL 5905415, at *7-8 (S.D. Fla. Nov. 9, 2018) (awarding fee of $33,333,333 of the $100 million settlement fund);* Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Ga. 2016) (noting that "a fee award of 33% … is consistent with attorneys' fees in federal class actions in this Circuit.").*

54. Class Counsel will submit a fee petition which will set forth the reasons the request for attorneys' fees is reasonable.

**The Settlement Is Fair, Reasonable, and Adequate and Preliminary Approval Is Appropriate**

55. Class Counsel believes the Settlement is fair, reasonable, and adequate and provides a reasonable result to Plaintiff and Settlement Class Members.

56. Furthermore, in my experience in handling data breach class action cases for plaintiffs, I can confirm that the Settlement benefits to Settlement Class

Members are fair and reasonable. The settlement afforded here, as compared to the uncertainty of damages even following a successful finding of liability, weighs in favor of preliminary approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 8, 2026. *\/s\/ Daniel Srourian*
Daniel Srourian

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| JIMMY KASHANIAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUATRRO BUSINESS SUPPORT SERVICES, INC.,<br><br>Defendant. | Case No. 1:26-cv-01800-TWT<br><br>**DECLARATION OF JACOB KAMENIR ON BEHALF OF SETTLEMENT ADMINISTRATOR SIMPLURIS, INC.** |

I, Jacob Kamenir, declare as follows:

1. I am Vice President for Legal Notice at Simpluris, Inc. ("Simpluris"). Simpluris is a national full-service class action notice and claims administrator located at 3194-C Airport Loop Dr., Costa Mesa, California 92626. I am over twenty-one years of age and authorized to make this declaration on behalf of Simpluris and myself. I am personally familiar with the details outlined here and believe them to be accurate and true.

2. I am an attorney licensed to practice in Minnesota, and hold a Master of Science in Industrial Administration (a variant of an MBA) from Purdue University. I have an extensive background in data analytics and legal marketing, and co-lead Simpluris' legal noticing team. I have developed and overseen, in whole or in part, hundreds of Notice Plans and administrations, and have given both written and oral testimony on notice and administration procedures in federal and state courts.

3. Simpluris has been administering class actions since 2007, in which time we have been appointed in over 10,000 cases and distributed over $10 billion in funds. Our leadership team

has over 100 years of combined industry experience that includes some of the largest class action administrations in the United States, including *In re: Equifax, Inc., Customer Data Security Breach*, Case No. 1:17-md-2800 (N.D. Ga.) and *In re: Premera Blue Cross Customer Data Security Breach*, Case No. 3:15-md-2633 (D. Or.). Recent representative cases include *Cordova et al v. United Education Institute et al*, Case No. 37-2012-00083573, Cal. Sup. Ct. (San Diego); *Shuts v. Covenant Holdco, LLC*, Case No. RG10551807, Cal. Sup. Ct. (Alameda); *Hamilton et al v. Suburban Propane Gas Corp.*, Case No. BC433779, Cal. Sup. Ct. (Los Angeles); *Upadhyay et al v. Prometheus Real Estate Group*, Case No. 1-08-CV-118002, Cal. Sup. Ct. (Santa Clara); *Starke v. Stanley Black & Decker Inc.*, Case No. C-03-CV-21-001091, Md. Cir. Ct. (Baltimore); and *Hale v. Manna Pro Products LLC*, Case No. 2:18-cv-00209 (E.D. Cal.).

## PRIVACY AND SECURITY

### Overview

4. Simpluris maintains robust data and cybersecurity practices, controls, and procedures. These include the use of layered, industry-leading software and hardware systems to prevent both external and internal unauthorized access to sensitive client and company data. Unique among other administrators, Simpluris has developed a comprehensive, integrated administration system, Cadence, which was designed specifically to provide the highest level of data privacy and anti-intrusion security. Our systems are monitored, tested, and constantly upgraded by a highly experienced team of IT professionals, and systemwide security is overseen directly by our CTO.

5. Simpluris is SOC 2 Type 1 and Type 2 certified. SOC 2 is a standard developed by the American Institute of CPAs (AICPA) to ensure that customer data is handled in a way that meets strict security, availability, integrity, confidentiality, and privacy standards. Certification requires an extensive audit of all aspects of company data practices by a qualified independent CPA or accounting firm. A security summary, further describing best practices and safeguards is attached hereto as Exhibit 1.

6. As an approved Redress Administrator for the FTC, and approved Fund Administrator for the SEC, Simpluris maintains Federal Information Security Management Act ("FISMA") and

National Institute of Standards and Technology ("NIST") certification for data security.

**Security and Access Controls**

7. In compliance with the above certifications, Simpluris maintains strict physical and electronic access controls. For physical infrastructure and equipment these include access logs, video monitoring, and alarm systems. For electronic systems, this includes comprehensive, constantly monitored and updated, best-in-class anti-intrusion and anti-exfiltration measures. Access privileges to all computers, including individual employee workstations, is limited to the minimum required. Requests for additional privileges must be approved by both the employee's manager and IT security.

**Administrative Policies**

8. All Simpluris employees undergo a pre-hire background check and screening process.

9. All Simpluris employees enter into a non-disclosure agreement.

10. All Simpluris employees are required to undergo HIPAA training.

11. All Simpluris employees are held to the highest ethical standards, and expected behavior is codified in the Employee Handbook, as well as other written policies and procedures. Simpluris adheres to clearly defined disciplinary procedures, and violations of policy can result in consequences up to and including termination of employment.

12. Only US-based employees have access to systems that contain class data.

13. When employment ends, the former employee's access to all Simpluris physical locations and electronic systems is immediately terminated.

14. Simpluris carefully reviews all vendors and third-party services and service providers, and engages only those who meet our high standards for security and reliability.

15. Simpluris has never experienced a data breach. However, should such an event take place, Simpluris maintains a detailed incident response plan. The plan includes specific internal procedures and responses, as well as external notifications to our general counsel and third-party stakeholders.

**Data Practices**

16. Simpluris will collect and maintain class data only to the extent required by the

administration of this Notice Plan.

17. In all situations in which Simpluris employees handle PII and PHI, including class member data, we do so solely for the purpose of carrying out our duties and responsibilities as a third-party administrator.

18. Class data is maintained and preserved only for as long as required for administration of the Notice Plan and any relevant subsequent reporting required. Data maintained on Simpluris' systems, including backups, is then deleted using NIST/DOD standards. Any data existing on external drives or other media provided to Simpluris in the course of the administration are either securely returned to the party that provided them, or wiped using NIST/DOD standards and physically destroyed.

**Insurance**

19. Simpluris maintains appropriate insurance coverage, including E & O and cybersecurity policies.

**<u>OVERVIEW</u>**

20. Subject to the Court's approval, Simpluris has been selected by the parties to serve as the settlement administrator for this matter. Based on information concerning the size and available contact information for the Class provided by Class Counsel to date and outlined below, Simpluris anticipates the final claims rate to be between 1% and 5%, and that the total costs of the administration will be approximately $199,037, which does not include the cost of claims made for the available CyEx benefit.

21. Based on information provided by Class Counsel to date, in the course of this administration Simpluris will be charged with, among other responsibilities:

a. establishing and maintaining an Interactive Voice Response ("IVR") toll-free telephone number that will be available 24 hours a day and offer answers to frequently asked questions ("FAQs");

b. developing and maintaining an interactive case website that will host relevant case documents and provide information and updates concerning this case to

Class Members, and will comply with data privacy requirements, including a detailed Privacy Policy;

c. mailing direct notice of the case to Class Members for whom a valid mailing address is available;

d. sending required CAFA notices;

e. online claim submission and deficiency cures through the Settlement Website

f. managing the claims validation and dispute process;

g. establishing and maintaining a 26 CFR § 1.468B-1 compliant Qualified Settlement Fund;

h. calculating the amounts due to each Class Member pursuant to the Settlement;

i. processing payments to Class Members;

j. administration of the CyEx credit monitoring benefit;

k. preparing and filing all applicable tax forms and tax returns with state and federal agencies; and

l. reporting on the status of award distribution as required by the parties and Court.

**NOTICE PLAN**

22. The Notice Plan described herein is designed using best practices and techniques commonly used in similar cases and approved by both federal and state courts.

23. Under Fed. R. Civ. P. 23, "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Additionally, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 174.

24. Based on information provided by Class Counsel, there are approximately 208,000 Class Members, and mailing addresses are available for substantially the entire Class. The Notice Plan outlined below utilizes United States Mail to disseminate individual notice directly to all Class

Members, and also includes a dedicated website and toll-free hotline for Class Members to obtain additional information about the case.

**Direct Notice by United States Mail**

25. Summary notice of the case will be mailed to all Class Members for whom a mailing address is available. Based on information provided by the parties, a mailing address is available in Defendant's records for all Class Members.

26. The mailed notice will be in the format of a double postcard, with a tearaway Claim Form.

27. Prior to mailing the notice postcard, Simpluris will update mailing address information via the United States Postal Services ("USPS") National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS. Additionally, all addresses will be processed through the USPS Coding Accuracy Support System ("CASS") and Locatable Address Conversion System ("LACS") to ensure deliverability.

28. Notices that are returned to Simpluris by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS, and the Class Member database will be updated accordingly.

29. Notices returned as undeliverable will be processed through a public records address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, and other sources, to locate updated mailing addresses. When new mailing addresses are located, the Class Member database will be updated and the email notice resent.

**Settlement Website**

30. Simpluris will create and maintain a settlement-specific website. The domain name for the website will be selected by the parties. The website will host important documents, including the long-from notice and Settlement Agreement; highlight relevant dates; list answers to frequently asked questions; and provide important case and scheduling updates as they occur.

31. The internet address for the website will be prominently listed in all notice documents.

**Dedicated Toll-Free Hotline**

32. A toll-free hotline devoted to this case will be implemented to help apprise Class Members of their rights and options. The toll-free hotline will be listed in the notices and on the class settlement website. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the class settlement. This hotline will be accessible 24 hours a day, 7 days a week.

**AWARD DISBURSEMENT**

33. Simpluris will establish and maintain a 26 CFR § 1.468B-1 compliant Qualified Settlement Fund for this Settlement. Simpluris will ensure that all federal and state statutory and regulatory tax filing and reporting requirements are fully complied with and completed.

34. Once the notice period and objection deadline have passed, Simpluris will calculate individual award amounts based on the Settlement Agreement. Upon final approval from the Court, Simpluris will disburse award payments to Class Members by check.

35. Any award payments that are returned by the USPS will be skip traced and remailed.

36. When appropriate, tax documents will also be mailed to Settlement Class Members.

37. Once Attorneys' Fees and Expenses, Service Awards, costs of notice and administration, and individual award payments have been paid and the final check negotiation deadline has passed, any residual funds remaining in the QSF will be disposed of in accordance with the Settlement Agreement.

**CONCLUSION**

38. Simpluris will execute the Settlement Agreement in keeping with the highest industry standards, and in full compliance with all applicable state and federal laws, regulations, and guidelines.

39. Simpluris will be able to execute this Notice Plan, including deliver the postcard Class

Notices to Class members and establish the website and toll-free hotline described above.

40. The guidelines provided by the Federal Judicial Center (FJC) in *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* state that 70% is a high reach threshold for notice. Although not binding, these guidelines are frequently treated as persuasive authority by both state and federal courts. The notice program described above is fully expected to meet and exceed this high threshold.

41. I believe that the proposed Notice Plan, consisting of direct notice by postcard, a settlement website, and a 24/7 call center, will fully comply with due process, the requirements set forth in Fed. R. Civ. P. 23, and all other state and federal laws, regulations, and FJC guidelines, and that the proposed administration as a whole will fully implement the Settlement Agreement reached by parties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 8, 2026, at Albert Lea, Minnesota.

Jacob Kamenir

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JIMMY KASHANIAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUATRRO BUSINESS SUPPORT SERVICES, INC.<br><br>Defendant. | CASE NO. 1:26-cv-01800-TWT<br><br>Hon. Thomas W. Thrash, Jr. |

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

This matter is before the Court for consideration of whether the Settlement reached by the Parties should be preliminarily approved, the proposed Settlement Class preliminarily certified, and the proposed plan for notifying the Settlement Class approved. Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement. Having reviewed the proposed Settlement, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, and the proposed notice plan approved. Accordingly, for good cause appearing in the record, IT IS HEREBY ORDERED THAT:

(1) **Class Certification for Settlement Purposes Only**. The Court provisionally certifies the following Settlement Class:

> All living individuals residing in the United States whose Personal Information may have been impacted by the Data Incident. The Settlement Class specifically excludes: (i) Quatrro, and its officers and directors; (ii) all persons who timely and validly request exclusion from the Settlement Class; (iii) the presiding judge, and his or her staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

The Court determines that for settlement purposes the proposed Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representative are typical of absent class members; that the class representative will fairly and adequately protect the interests of the class as he has no interests antagonistic to or in conflict with the class and has retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

(2) **Class Representative.** Jimmy Kashanian is designated and appointed as the Class Representative.

(3) **Class Counsel.** Daniel Srourian of Srourian Law Firm, P.C. is designated as Class Counsel pursuant to Fed. R. Civ. P. 23(g). The Court finds that this lawyer is experienced and will adequately protect the interests of the Settlement Class.

(4) **Preliminary Approval of the Proposed Settlement**. Upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate, otherwise meets the criteria for approval, and warrants issuance of notice to the Settlement Class pursuant to Rule 23(e). Accordingly, the proposed Settlement is preliminarily approved. In making this determination, the Court has considered the adequacy of representation by the class representative and Class Counsel; the

adequacy of relief provided to the Settlement Class, including monetary benefits provided to the Settlement Class through the Settlement; the specific risks faced by the Settlement Class in prevailing on their claims, the good faith, arms'-length negotiations between the Parties and absence of any collusion in the Settlement; the effectiveness of the proposed method for distributing relief to the Settlement Class; the proposed manner of allocating benefits to Settlement Class Members; that the Settlement treats the Settlement Class Members equitably; and all of the other factors required by Rule 23 and relevant case law.

(5) **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

(6) **Final Approval Hearing.** A Final Approval Hearing shall take place before the Court on ____________________, at ________ in Courtroom 2108, 2188 Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303-3309, to determine, among other things, whether: (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and finally approved pursuant to Fed. R. Civ. P. 23(e); and, in accordance with the Settlement's terms, all claims against Quatrro Business Support Services, Inc. in the Class Action Complaint should be dismissed with prejudice; (c) Settlement Class Members (who have not timely and validly excluded themselves from the Settlement) should be bound by the releases set forth in the Settlement; (d) a Final Approval Order and Judgment should be entered; (e) the application of Class Counsel for the Fee Award and Litigation Costs should be approved pursuant to Fed. R. Civ. P. 23(h); and whether a Service Award should be made to the Class Representative. Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(7) **<u>Attorneys' Fees and Expenses.</u>** Class Counsel shall submit their application for payment of the Fee Award and Litigation Costs, and for the Service Award, no later than twenty-one (21) days before the Objection/Exclusion Deadline.

(8) **<u>Exclusions from the Class.</u>** Any person in the Settlement Class that wishes to be excluded from the Settlement must submit a written request for exclusion to the Settlement Administrator at the designated address established by the Settlement Administrator, postmarked or received no later than sixty (60) days after the Notice Date (the "Objection/Exclusion Deadline"). The written request for exclusion must:

(i) identify the case name and number of this Action (*Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT);

(ii) state the full name and current address of the person in the Settlement Class seeking exclusion;

(iii) be personally signed by the person(s) seeking exclusion;

(iv) include a statement in the body of the document clearly indicating the person's intent to be excluded from the Settlement; and

(v) request exclusion only for that one individual identified on the request.

No person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs, and any purported mass or class opt-outs shall be deemed invalid by the Settlement Administrator. Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be bound by the Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

The Settlement Administrator shall provide the Parties with copies of all requests for exclusion promptly upon receipt, a weekly report which includes a summary of the number of requests for exclusion, and, within five (5) Business Days after the Objection/Exclusion Deadline, a final list of all individuals that have timely and validly excluded themselves from the Settlement in accordance with the terms of the Settlement and herein. Prior to the Final Approval Hearing, the Settlement Administrator shall also prepare and execute a declaration identifying each individual who timely and validly requested exclusion from the Settlement.

All individuals who submit valid and timely requests for exclusion from the Settlement shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement.

(9) **Objections and Appearances**. Any Settlement Class Member that has not timely and properly excluded itself from the Settlement in the manner described above, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Settlement Class Member that has elected to exclude itself from the Settlement shall be entitled to object or otherwise appear, and, further provided, that no Settlement Class Member shall be heard in opposition to the Settlement unless the Settlement Class Member complies with the requirements of this Order pertaining to objections, which are described below.

A Settlement Class Member that complies with the requirements of this Order may object to the Settlement. No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless a written objection is filed with the Court on or before the Objection/Exclusion Deadline, which shall be

sixty (60) days after the Notice Date, and copies of such papers are provided to Class Counsel and Defendant's Counsel via e-mail, U.S. mail, hand, or overnight delivery service. For the objection to be considered by the Court, the written objection must include:

(i) the objector's full name and current address, and the case name and number of the Action (*Jimmy Kashanian v. Quatrro Business Support Services, Inc.*, Case No. 1:26-cv-01800-TWT);

(ii) a statement that he or she believes himself or herself to be a member of the Settlement Class, including information identifying the objector as a Settlement Class Member;

(iii) a statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

(iv) the specific grounds for the objection, together with all documents or writings that the objector desires the Court to consider;

(v) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection;

(vi) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek *pro hac vice* admission); and

(vii) be personally signed by the objector.

In addition to the foregoing requirements, for any objection made with the assistance of any attorney, law firm staff, or other person who may profit from the

pursuit of the objection to be valid, the objection must also include: (a) a written statement of any legal support for such objection; (b) copies of any papers, briefs, or other documents upon which the objection is based that the objector wishes the judge to consider when reviewing the objection; (c) a list of all persons who will be called to testify in support of the objection, if any; and (d) a detailed list of any other objections and orders pertaining to the prior objections submitted by the objector, or his or her counsel or other person who may profit from the pursuit of the objection, in any action in the previous five (5) years, or, if none, an affirmative statement to that effect.

A written notice of objection must be filed with the Court no later than the Objection/Exclusion Deadline, with copies sent to Class Counsel and Defendant's Counsel, and, for a Settlement Class Member represented by counsel, filed through the Court's electronic filing system with an appearance entered by such counsel. A written notice of objection must also be mailed to Simpluris Class Action Administration at: Quatrro Data Incident Settlement, ATTN: Objections [PO Box Number], Santa Ana, CA 92799-9958.

(10) Any Settlement Class Member who fails to object to the Settlement in the manner described herein shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

(11) **Administration.** Simpluris Class Action Administration ("Simpluris") is appointed as the Settlement Administrator, with responsibility for providing the Notice, creating and maintaining the Settlement Website, reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members, receiving and distributing any objections and exclusion requests, as set forth in this Order, and all other obligations of the Settlement Administrator as set forth in the

Settlement. All Settlement Administration Expenses, including the cost of Notice, incurred by the Settlement Administrator will be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement.

(12) **Notice to the Class.** The proposed notice program, along with the Short Notice, Claim Form, and Long Notice attached to the Settlement Agreement as Exhibits 1 through 3, satisfy the requirements of Federal Rule of Civil Procedure 23 and due process and thus are approved. Non-material modifications to these exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the notice program and to perform all other tasks that the Settlement requires. Defendant shall provide the Settlement Administrator with the Settlement Class Member list within fourteen (14) days after entry of this Order, and the Settlement Administrator shall disseminate the Notice no later than thirty (30) days after entry of this Order, in accordance with the Settlement Agreement.

(13) **Findings Concerning Notice.** The Court finds that the form, content, and method of giving notice to the Settlement Class as described in the Settlement Agreement, Short Notice, Long Notice, and Claim Form: (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23(c), the constitutional requirement of the Due Process Clauses(s) of the United States and Georgia Constitutions, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members. The Settlement Administrator is directed to carry out the notice program in conformance with the Settlement Agreement.

(14) **Claims Process and Distribution Plan.** The Settlement establishes a process for assessing and determining the validity and value of claims and a methodology for paying Settlement Class Members that submit a timely, valid Claim Form. The Court preliminarily approves this process.

Settlement Class Members that qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement Agreement, including the Claim Form. If the Settlement is finally approved, all Settlement Class Members that qualify for any monetary benefit under the Settlement that requires submission of a claim but fail to submit a claim in accordance with the requirements and procedures specified in the Settlement Agreement, including the Claim Form, shall be forever barred from receiving any such monetary benefit, but will in all other respects be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

(15) **Termination of the Settlement and Use of this Order.** This Preliminary Approval Order shall become null and void and shall be without prejudice to the rights of Plaintiff and Quatrro, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement. In such event, the Settlement shall become null and void and be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against Quatrro of any fault, wrongdoing, breach, or liability; shall not be construed or used

as an admission, concession, or declaration by or against the Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims he or she may have in this Action or in any other lawsuit. Any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

(16) **Stay of Proceedings**. Except as necessary to effectuate this Order, the claims against Quatrro and any deadlines set by the Court as to the claims against Quatrro are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

(17) **Continuance of Final Approval Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

(18) **Summary of Deadlines.** The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement and this Order include but are not limited to the following:

| ACTION | DEADLINE |
|---|---|
| CAFA Notice to State and Federal Officials | 10 days after filing the Settlement with the Motion for Preliminary Approval |
| Defendant Provides Class List | 14 days after Court's entry of Preliminary Approval Order |

| | |
|---|---|
| Defendant will cause to be deposited $2,080,000.00 into the Escrow Account | Within 30 days of the later of (1) the Effective Date or (2) Defendant's receipt of the Settlement Administrator's funding instructions and Form W-9 |
| Notice Date | No later than 30 days after entry of this Preliminary Approval Order, at which time notice will be disseminated to the Settlement Class |
| Motion for Attorneys' Fees, Litigation Costs and Service Award | At least 21 days prior to the Objection/Exclusion Deadline |
| Objection/Exclusion Deadline | 60 days after the Notice Date |
| Claims Deadline | 90 days after the Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to Final Approval Hearing |
| Final Approval Hearing | At least 120 days after the date of entry by the Court of the Preliminary Approval Order. . |

IT IS SO ORDERED this _____ day of _____________________.

______________________________
Hon. Thomas W. Thrash, Jr.
United States District Judge
Northern District of Georgia
Atlanta Division